## ·VALERY LEDOUX *v.* J. ALLEGRE et al.

Plaintiff sued for a trespass in cutting wood on his land. Defendants pleaded in justification, a servitude of cutting wood on plaintiff's land, in favor of land owned by him. Plaintiff replied that the servitude was extinct by non-usage. *Held:* That *quoad* the question of servitude, the defendants are the real plaintiffs; and that the plaintiff in this action might well set up the prescription of non-usage as against the alleged servitude; and that plaintiff might have availed himself of the prescription of non-usage without having specially pleaded it.

In such a case, the objection that prescription is a means of defence, and not a ground of action, is not well taken.

Where the prescription of non-usage is pleaded, the *onus* of proving the exercise of the right of servitude within the time of prescription, is thrown on the party claiming the right.

The erroneous reservation in the *proces verbal* of the sale at which plaintiff acquired title of a " community of wood," held not to be a renunciation of the prescription of the servitude, already acquired by the authors of plaintiff's title.

A right of community of wood is a very different thing from a *servitude* of cutting wood.

APPEAL from the District Court of St. Martin, *Voorhies,* J.
*A. Deblanc,* and *F. Fusilier,* for plaintiff. *E. Simon,* and *J. Gary,* for defendants and appellants.

SPOFFORD, J. The plaintiff sued the defendants, claiming $1,500 damages, for a trespass in cutting down trees upon his land, on the east side of the bayou Têche, and within the enclosure around his house. There are divers other matters set forth in the petition, by way of anticipation of the expected defence, which it is not material now to notice.

As expected, the defendants, in reality, justified the trespass by setting up the existence of a servitude in favor of the land owned by them on the west side of the bayou Têche, upon the tract claimed by the plaintiff on the east side, which entitled them to cut wood from the latter for the use of the former; they denied that they had ever exercised their right of servitude to a greater extent than that provided for by their titles, or that they were liable in damages therefor; in conclusion, they prayed, "that they be confirmed in their right of servitude as provided for by the titles, subject to be lawfully exercised against the claims of the plaintiff or any other person holding the land, through or under him, and without any opposition on their part."

After this answer was filed, the plaintiff obtained leave to file an amended petition, setting up "in bar of defendant's pretended right of servitude, the prescription of ten and twenty years."

There was a judgment for the plaintiff, awarding him $100 damages, and quieting him in his title to his property against interruption from the pretended servitude of the defendants.

The latter have appealed.

The plaintiff's title to the land claimed in his petition, and the cutting of the timber thereon by the defendants, (some of it even in an unnecessary and wanton manner,) are fully proven by the evidence.

The real point of controversy is, the present existence of the servitude under which the defendants attempt to justify their acts.

They strenuously contend that, supposing a servitude ever to have existed, the plaintiff cannot legally invoke the prescription of non-usage against it, inasmuch as the plea of prescription against an asserted right, is but a means of defence, and not a ground of action.

The argument overlooks one branch of plaintiff's demand, and misconceives the real character of his action.

He claims damages for a trespass. The defendants, in effect say, they are not trespassers, because they have a servitude upon the plaintiff's land, which authorized them to cut the timber, for doing which they are sued.

The plaintiff replies, that if they or their authors ever had such a servitude, it has been lost and become extinct by non-usage for more than ten years.

*Quoad* the question of the servitude, the defendants are really the plaintiffs. And the nominal plaintiff might avail himself of the position, that the servitude has been extinguished by non-usage, even without a plea to that effect, replications not being usual under our system of practice.

The plaintiff's demand is not founded upon an exception. It is true he has added some allegations, which were perhaps unnecessary, but which he makes, because he probably knew beforehand, the defence which would be set up. But that does not not wholly change the character of the action; it is still an action of trespass.

To say that prescription for non-usage cannot be invoked by a plaintiff who seeks to restrain a defendant from trespassing upon his property, by reviving an extinct servitude, would be to abolish altogether the prescription of non-usage. For the party who wished to revive such a servitude, would not resort to an action in which he would be sure of defeat, where, by taking the law into his own hands, and proceeding to exercise the servitude, he would be sure to defeat his adversary, who should seek to enjoin him, or make him liable in damages.

The defendants themselves have put the existence of the servitude at issue; upon that point, they hold the affirmative; if they have failed in establishing it, the judgment is correct.

There is also a rule with regard to the burden of proof which is important to be considered in this connection. Art. 800 of the Civil Code declares, that, "when the prescription of non-usage is opposed to the owner of the estate to whom the servitude is due, it is incumbent on him to prove that he or some person in his name, has made use of this servitude as appertaining to his estate during the time necessary to prevent the establishment of the prescription."

Now, by Art. 785, "a right to servitude is extinguished by the non-usage of the same during ten years, if the parties be present, and twenty years, if absent."

Art. 786 says "the time of prescription for non-usage begins for interrupted servitudes, from the day they ceased to be used."

The defendants upon whom the *onus* of proof as to this matter, lay, were unable to establish that the servitude they claim had been in any manner exercised since about thirty years before they attempted to revive it by cutting the wood as complained of in the plaintiff's petition.

This would be decisive of the case, were it n'ot that a question of much greater difficulty arises touching a pretended renunciation of prescription by the plaintiff and the immediate authors of his title.

The examination of this point compels us to go somewhat into detail.

A tract of land on both sides of the Bayou Têche, having five arpents front on the east, and six on the west side of said bayou, with a depth of forty-two arpents on each side, was confirmed to *Joseph Melançon*, by virtue of settlement and cultivation prior to the 20th December, 1803.

Some of this land was acquired by *Wm. Pitt Higbee*, who, on the 20th October, 1812, sold to *Alexander Ledoux*, ancestor of the present plaintiff, the tract now by him claimed, and described in the sale from *Higbee* as "on the *east* bank of Bayou Têche, bounded on the north by lands of *Michel Cormier*, and on the South by lands of *François Pothier*, containing five acres (arpents) front, by the ordinary depth of forty." This deed contained the following reservation under which the defendants assert their right of servitude : " Whereas the said *Higbee* is proprietor of five acres (arpents) front, by forty in depth on the *west* side of the bayou aforesaid, it is understood between the parties to these presents, that the said *Higbee*, his heirs and assigns, are to retain the privilege of taking the fire-wood necessary for the use of the said tract."

*Emilie Barré*, wife of *Wm. Pitt Higbee*, was his universal legatee, and, after his death, became the owner of the five acres aforesaid, on the west side of the Têche.

On the 30th August, 1853, *Emilie Barré*, the widow of *Higbee*, (and the survivor of her second husband, *Joseph Gradenigo*) conveyed by authentic act to the defendant, *Joseph Allegre* " a certain tract of land, situated in the parish of St. Martin, and lying on the west side of the bayou Têche, measuring four arpents in front on said bayou, by forty arpents, more or less, in depth, bounded on the north by land of *Pierre Sauveur*, and on the south by land of *Darmencourt Babin*, on the east by said bayou, and on the west by land of *Bienvenu.*"

This act of sale contained the following clause, which is worthy of especial notice :

" It is also understood between the parties. that should it appear hereafter that there exists a right to take wood on some wood-land near by said land thus sold, and belonging to the owner of this said land sold, the use of said wood land is hereby sold and transferred with the above land, without further guaranty or consideration."

As forty-one years had elapsed since *Higbee* resumed the servitude, and as it had been disused for a period of thirty years, the parties might well suppose it to be a very doubtful right, only to be asserted upon the discovery of new evidence, or in case it " should hereafter appear " to exist.

But the plaintiff acquired his title to the land claimed by him at a succession sale made on the 19th January, 1854.

In the *proces verbal* of the sale, appears the following statement upon which the defendants rely as constituting an acknowledgment of their claim, and a renunciation of prescription :

"Il existe encore une communauté de bois en faveur de *M. M. Joseph Alle-gre* et *Pierre Sauveur* sur toute la face de la terre ci-dessus."

But the plaintiff in his original petition averred that this statement in the *proces verbal* was an absolute error, into which the heirs of *Ledoux* and the auctioner were led by the unfounded and interested representations of the defendant, *Joseph Allegre*, and that the same was not, therefore, binding upon the plaintiff; these allegations and the prayer that it be decreed that no such "community of wood" exists, have somewhat confused the plaintiff's action, and led the defendants to contend that it was in fact grounded upon an exception.

A "community of wood in favor of *Allegre* and *Sauveur* upon all the front " of the plaintiff's tract, is a widely different right from the privilege "reserved by *Higbee* in 1812," of taking the fire-wood necessary for the use of "the five acres on the other side of the bayou." Pardessus Servitudes, No. 7 ; Ib. No. 233.

It is most manifest from the evidence adduced by the defendants themselves that no such community was ever claimed by any of the authors of their title. The statement in the *proces verbal* was then an error ; and, after a protracted examination of the case in all its bearings, we are compelled to concur in the conclusion to which the District Judge must have come in order to render the judgment he did, that the error was produced by the assertions of *Allegre* himself, who cannot, therefore, be permitted to profit by the statement. His own cautiously worded title put him upon the proof of even " a right to take wood " on other land ; and his researches must have convinced him that no one before him had ever claimed so extensive a right as that which, by his assertions and threats of suits, he induced the parties to the succession sale to admit in the *proces verbal.*

The far different right of servitude on the plaintiff's land for a limited supply of fire-wood necessary for the use of defendant's tract was not acknowledged in the sale ; and that right, which, in his answer, *Allegre* seeks to have recognized by reason of the reservation in *Higbee's* deed to *Alexander Ledoux* is clearly extinct by non usage for the space of thirty years.

It is, therefore, ordered and decreed, that the judgment appealed from, be affirmed with costs.