J. U. Lavillebeuvre *v.* James Cosgrove.

13 323
51 1005

Where the owner of the lots on both sides of a division wall makes an opening or window in the wall,
it is an act constituting the "*destination du pere de famille,*" and is equivalent to a title creating a
servitude, as soon as a division of the ownership of the property takes place.

The erection of works contrary to the servitude would not have the effect of extinguishing it, unless the
owner of the estate to which the servitude was due had given an express permission or consent to the
erection of such works either verbally or in writing.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.
G. *Legardeur,* for plaintiff. E. S. *Oliver,* for defendant and appellant.

Buchanan, J. An important distinction between the present case and that of
*Jeannin* v. *DeBlanc,* 11 An., 465, quoted by defendant, is, that the wall between
the properties of plaintiff and defendant, is a wall in common. Through such a
wall, one of the co-proprietors cannot make an opening without the consent of the
other co-proprietor. C. C. 692.

But the defendant urges his right to the opening in question, upon the ground
that the wall now held in common between himself and the plaintiff, was built by
a person who was at the time the owner of lots on both sides of the wall; that the
opening or window was made in the wall by the said owner at the time of build-
ing; and that this act of the original proprietor of both properties, is equivalent
to a title creating a servitude upon the property now belonging to plaintiff, for the
benefit of that belonging to defendant. The evidence on this subject is, that the
two adjoining lots of ground of plaintiff and defendant originally belonged to
*Daniel T. Walden,* and were built upon by him. The same buildings now stand-
ing upon the lots were those put up by *Walden* about the year 1838; and the wall
now held in common by plaintiff and defendant, was erected with a window in it—
the same window of which plaintiff complains. Both the adjoining properties,
now owned by plaintiff and defendant respectively, were sold by the Sheriff in
execution of a judgment against *Daniel T. Walden,* and adjudicated to the City
Bank of New Orleans on the 27th June, 1842. The City Bank sold to *Henry
Parish* the property now held by defendant on the 19th March, 1849. On the
13th April, 1853, *Henry Parish* sold to defendant.

The property now held by plaintiff was acquired by him from the Union Bank
of Louisiana, on the 11th November, 1845; and by the Union Bank from the
Commissioners of the Atchafalaya Railroad & Banking Company, on the 21st of
July, 1842.

While the property now held by defendant belonged to his vendor *Parish,* and
about six months before the sale from *Parish* to defendant, plaintiff, of his own
authority, closed the window which had thus existed in the partition wall between

himself and *Parish* from the time of its first erection, by nailing heavy planks across the venetian blinds of the window on the outside. Things were in this state when defendant purchased the property from *Parish*. Defendant having re-opened the window, plaintiff brings this action to have the same closed, and sounding in damages for a trespass.

There is no doubt that the building of this division wall with the window, by *Walden*, who was the owner of the land on both sides of the wall, constituted, what is called in the French text of Articles 645 and 763 of the Code, (the latter Article copied from Article 692 of the Code Napoleon), a "*destination du père de famille*"; which, by the Articles 763, 764, and 765, was equivalent to a title creating a servitude, as soon as a division of the ownership of the properties took place, by the sale from the City Bank to *Parish*.

This appears, indeed, to be conceded by the learned counsel of the plaintiff. But he argues, that defendant has acquired the property in the condition in which it was at the time of his purchase; and because the window was closed up with boards at the time of the sale from *Parish* to defendant, it must therefore remain boarded up in perpetuity; and the removal of the boards by defendant, is a trespass.

This argument cannot meet with our sanction. *Cosgrove* acquired from *Parish*, by his title, a lot of ground, "together with all the buildings and improvements thereon, *rights, privileges* and appurtenances thereunto belonging, *or in any wise appertaining.*" *Parish* had acquired from the City Bank, by identically the same description. The servitude of sight existed, as we have said, in favor of *Parish*. It was transmitted to *Cosgrove*, unless it had been lost in *Parish's* hands. It is pretended that it was so lost by the act of plaintiff, barring up the window. But we do not find such a proceeding to be one of the modes indicated for extinguishing servitudes, by Article 779 of the Code. The erection of works contrary to the servitude, may, it is true, have the effect of extinguishing the servitude. But this effect follows, according to Article 816, only when the owner of the estate to which the servitude is due, has given an express permission or consent to the erection of such works, either verbally or in writing, which is not pretended in the present case.

The judgment of the District Court is, therefore, reversed, and judgment rendered against plaintiff and in favor of the defendant and appellant, with costs in both courts.