LAND, Justice.
 

 Joseph Casso, Jr., and Joseph Schoeny are plaintiffs in separate petitory actions. The suits were consolidated in the Twenty-third Judicial District Court for the Parish of Ascension, as the issues involved are the same.
 

 Joseph Casso, Jr., claims title to two batture lots lying immediately in front of Block No. 78 in the Subdivision of Port Barrow, in the Parish of Ascension, Louisiana.' The-lots lie between the public highway along Bayou Lafourche and the water’s edge of the Bayou.
 

 Joseph A. Schoeny claims title to two batture lots lying immediately in front of Lots 1 and 2 of Square 79 in the Subdivision of Port Barrow, in the Parish of Ascension, Louisiana. These lots also lie between the public highway along Bayou Lafourche and the water’s edge.
 

 The defendants, Ascension Realty Company of Donaldsonville, Louisiana, Linden E. Bentley, Mrs. Ella Bentley Arthur and G. Donnaud Bentley, lay claim to an undivided five-sixths interest in and to these batture lots.
 

 Separate judgments were rendered in favor of each of the plaintiffs, and, on appeal to the Court of Appeal, First Circuit, these judgments were reversed by a divided court, Judge Dore and Judge ad hoc Jones concurring in the decrees, and Judge Ott dissenting in each case. The case is now before this court for review under writs of certiorari herein granted.
 

 The opinions of the District Court are based upon the same reasons in each case. The opinion is as follows:
 

 “The plaintiffs in this suit were orginally the defendants in a possessory action brought by the defendants herein. Plaintiff availed himself of article 55. of the Code of Practice and converted the suit into the present petitory action. Defend
 
 *6
 
 ants filed a' plea of lis pendens which was overruled and then answered setting forth that they' were owners of an undivided five-sixths interest in the property involved in the litigation, not contesting the title of plaintiff’s authors to an undivided one-sixth interest. Defendants also allege that they have been in actual physical possession for a period of over thirty years. Plaintiff traces his title back to one William W. Buford, who acquired Section 32, T. 11 S., R. 14' E. in the Southeastern Land District West of the Mississippi River in Ascension Parish, Louisiana, in which section the lots involved in this suit lie, by patent from the State of Louisiana. Defendants offered evidence attacking' the validity of this patent, to which plaintiff filed a plea of prescription on the ground that any action to annul such patent is prescribed in six years from the date of issuance.
 

 “On the trial of the case, Plaintiff introduced certified copies of various deeds and judgments tracing his title back to the patentee of Section 32, T. 11 S., R. 14 E., William W. Bufo.rd, as has been previously stated.
 

 “Defendant offered evidence at the trial to dispute the validity of the patent granted by the State of Louisiana to William W. Buford. (See Trans, pages 31 and 32) However, the evidence has not been supplied in the record and the Court can find no reason for holding the patent invalid. Furthermore, the provisions of Act No. <52 of 1912 are applicable since the prescriptive period of six years has long since expired and the patent, issued by the State, is duly signed by the Governor and the Register of the State Land Office. Therefore, the Court holds that the patent issued to William W. Buford is valid and will consider the other' phases of the case under this assumption.
 

 “The position taken by the Plaintiff is that Buford nor any of his successors in title ever disposed of the particular property involved in this law-suit, and that, consequently, he acquired a good title from their authors, the successors to Buford's title. Defendants in contravention claim that Buford entered into an agreement whereby he relinquished a two-third’s interest in and to certain property which included the lots in litigation. Out of this contention arises the most serious issue in the case. It will therefore be necessary for the Court to analyze in detail the salient features of these agreements or compromise acts.
 

 “On February 15, 1890 Chas. A. Camp, acting through his duly authorized agent, sold to Wm. M. ■ McGalliard and Bernard Lemann, certain property described in the act of sale as follows :
 

 “ ‘All of my property at Port Barrow said land consisting principally of lots of ground
 
 as per plan of said town of Port Barrow made by V. Sulakowski
 
 and of record in the Recorder’s Office of this parish,
 
 the plan being made a part and portion of this action
 
 (act).’ (Italics ours.)
 

 “On the same day another act was executed in conjunction with this act before the same Notary and witnesses, by which Camp, acting through the same agent, sold to William W. Buford an undivided one-
 
 *8
 
 third interest in and to the said property which was described identically in both acts. William W. Buford appeared in the act previously mentioned relinquishing all his claim to the property described therein arising out of his patent to the same. From the clear wording of these deeds, the Court can reach no other conclusion but that Buford only abandoned his interests into the property described in the deeds and the question then presents itself as to what property was meant to be included in these acts.
 

 “It is well to observe at this time that there was filed along with these acts in the original records of the Clerk of Court’s office a map, which is not signed by V. Sulakowski as stated in the description, but was filed for record attached to the two acts. Defendants raised the contention that since the map was not signed by V. Sulakowski, that it can not be considered in connection with these acts. However, since it was attached to and filed with the acts, the Court is of the opinion that the parties intended to consider it a part thereof and shall so do.
 

 . “There is nothing in the worded description which would indicate that the batture was meant to be included. The most that this description states is ‘all of my property at Port Barrow, consisting principally of lots of ground.’ The Court is of the opinion that it can not be ascertained with any degree of certainty what property was meant to be included by referring to this description. Under the jurisprudence of this State, the Court must then look to the map which the parties intended to be guided by. The controlling decision on this point is the case of Maginnis Land & Improvement Co. v. Marcello et al., 168 La. 997, 123 So. 653, 654, and authorities cited therein. In that suit, the properties were described as having a front of so many feet on Bayou Lafourche and reference made to a map. The map showed the properties as fronting on the public road and was controlling. The Court quotes from Justice Brunot’s decision, as follows:
 

 “ ‘The map itself and the diagrams incorporated in some of the deeds show that each tract fronts on the public road along Bayou Lafourche, and not on Bayou Lafourche itself as recited in the descriptions in the deeds.
 

 “ ‘There evidently then is a discrepancy between the deed and the map or diagram in each case, making the description itself uncertain. In such case, the law governing us is to be found in those decisions which controlled us in the case of South Louisiana Fair Association v. Omer Robert, decided in this court a few months ago and recently affirmed by the Court of Appeal, First Circuit, as appears in the reported decision, 3 La.App. page 505.
 

 “
 
 ‘In announcing the conclusion reached by the court in that case, Justice Paul Leche, writer of the opinion, says:
 

 “ ‘ “There is an apparent conflict between the description construed in connection with the conveyance record and that shown by the lines on the map of survey by Webb in 1917, and the single question involved, is which should control. That question, in our opinion, has passed the stage
 
 *10
 
 of uncertainty and is now settled by the decisions in Canal Bank v. Copeland, 6 La. [543] 548; Gray v. Coco, 113 La. 33, 36 So. 878; Perry v. Board of Commissioners, 132 La. (415), 61 So. 511; Werk v. Leland University, 155 La. (971), 99 So. 716. The diagram or map referred to controls the description.” ’
 

 “Likewise, in the present case the map controls. We observe that immediately adjacent to Lot (Block) 78 is Bayou Street, which is now the Public Highway, and immediately adjacent thereto is Bayou Lafourche. Since the lots which form the subject of this litigation are not shown thereon, the Court is forced to hold that they were not meant to be included in these compromise acts, and that Buford retained the title to the property which he acquired by virtue of his patent.
 

 “Regardless of the question of admissibility of the evidence of defendants with respect to the lease of the Mississippi River batture and the division of rentals therefrom, the Court is of the opinion that plaintiff’s title to the lots involved in this suit can not be affected by any evidence or documents of any kind other than recorded deeds affecting the particular property which he purchased. It is an elementary principle of law requiring no citation of authority that a bona fide purchaser buying on the face of the registry records is protected to the full extent of the law.
 

 “Defendants have failed to sustain their allegations of possession, there being no such evidence in the record other than that the Ascension Realty Company was assessed with batture rights’ as far back as 1917. The fact that they were so assessed does not establish possession of the lots in question.
 

 “The Court has carefully analyzed all of the serious contentions raised by defendants. There is no evidence to show that Buford or any of his successors disposed of any further interests in the property before plaintiff acquired it.”
 

 In the case of Joseph Casso, Jr., the following judgment was rendered by the Twenty-third Judicial District Court for the Parish of Ascension:
 

 “For the above and foregoing reasons, the law and the evidence being in favor of the plaintiff, Joseph Casso, Jr., it is or-, dered, adjudged and decreed that there be judgment in his favor, recognizing the said Joseph Casso, Jr., as the true and lawful owner of the property described in his petition, as follows, to-wit:
 

 “ ‘Two lots having each sixty feet front along State Highway No. 29 leading from Donaldsonville to Napoleonville on the West or right descending bank of Bayou Lafourche and at the intersection of what is known as Tenth Street of Port Barrow extended (and now presently continued across Bayou Lafourche into the town of Donaldsonville) with said State Highway No. 29 and directly opposite and in an easterly direction from Block No. 78 of the Port. Barrow Subdivision; said' two lots have an aggregate frontage of One Hundred and Twenty Feet along and on the Easterly side of said State Highway No. 29 and extend in depth, to the Eastward One Hundred and Fifty Feet or more to the center line of Bayou Lafourche, including
 
 *12
 
 all accretion or batture rights belonging to said lots as contained in the original Section 32 of Township 11 South Range 14 East in S E Land District of Louisiana,, West of the Mississippi River, of which said two lots form a part. Said lots lie immediately on the North side of Tenth Street extended, now a paved highway.’ and as such, entitled to the full and undisturbed possession thereof and ordering the said defendants, Ascension Realty Company, Linden E. Bentley, Ella Bentley Arthur and G. Donnaud Bentley, to deliver possession of the said property to petitioner and further ordering the dismissal and abatement of the possessory action heretofore filed in this court bearing the title, ‘The Ascension Realty Company, et als v. Joseph Casso, Jr., et als, No. 4553 of the docket of this court, at plaintiff’s costs. Costs of the present suit are to be paid by defendants.”
 

 And in the case of Joseph A. Schoeny, the following judgment was rendered by the Twenty-third Judicial District Court for the Parish of Ascension:
 

 “For the above and foregoing reasons, the law and evidence being in favor ,of plaintiff, Joseph A. Schoeny, it is ordered, adjudged and decreed that there be judgment in his favor, recognizing the said Joseph A. Schoeny as the true and lawful owner of the property described in his petition, as follows, to-wit:
 

 “ 'A certain portion of ground or land in the Parish of Ascension, Louisiana, between the Louisiana Paved Highway No. 29 and the edge of Bayou Lafourche, and lying immediately in front of lots One and Two (1 & 2) of Square No. Seventy-nine (79) of the subdivision of Port Barrow, in Ascension Parish, which lots One and Two, in Square No. 79, are more fully shown and described by reference to a plan of said village of Port Barrow made by one V. Sulakowski, Dy. U. S. Surveyor, which plan and map is on file in the records of the Clerk of Court’s office in and for the parish of Ascension, Louisiana; the upper and lower boundaries of said tract sold herein being formed by extending the upper line of Lot No. One and of the lower line of Lot No. 2 to the water’s edge on Bayou Lafourche.’ and as such, entitled to the full and undisturbed possession thereof and ordering the said defendants, Ascension Realty Company, Linden E. Bentley,. Ella Bentley Arthur and G. Donnaud Bentley, to deliver possession of the said property to petitioner and further ordering the dismissal and abatement of the possessory action heretofore filed in this court bearing the title, ‘The Ascension Realty Company, et als, v. Joseph A. Schoeny, et als, No. 4552 of the docket of this court, at plaintiff’s costs. Costs of the present suit are to be paid by defendants.”
 

 The real issue in the case revolves about the interpretation of two notarial acts, both •executed on February 15, 1890, before the same Notary, and evidently in conjunction with each other. In one of these acts, Charles Camp, through his attorney in fact, sold to William McGalliard and Bernard Lemann, William W. Buford joining in and taking cognizance thereof, the following described property, to-wit:
 

 
 *14
 
 “The undivided two-thirds of all the title and interest of the said Charles A. Camp in and unto that certain tract of land situated in the Parish of Ascension and known as Port Barrow and being the undivided two-thirds of the land divided (devised) by the late John B. Pittman by his last will and testament to said Charles A. Camp and called by him ‘All of my property at Port Barrow’ said land consisting principally of lots of ground
 
 as per plan of said Town of Port Barrow made by V. Sulakowski and of record in the recorder’s office of this parish, the plan being made a part and portion of this action
 
 (act).” (Italics ours.)
 

 The other act entered into on that day was a compromise agreement by which William W. Buford received an undivided one-third interest and Camp the two-thirds interest as set forth above in and to the above described property. There was attached to these acts
 
 a map zvhich did not in any way show the batture involved in this law-suit.
 
 The map in question is. not the original V. Sulakowski map referred to in the description which, incidentally, could not be located. Defendants contend that, in spite of this fact, the batture lots were meant to be ' included and, consequently, having acquired the interests of McGalliard and Lemann, they now have title to an undivided two-thirds interest in the lots.
 

 That the diagram or map attached to a deed controls the description has been so repeatedly held by this court that this rule has become a law of property in this State, and cannot be lightly disregarded in this case or any other case. The map controls the worded description.
 

 We do not agree with the Court of Appeal, First Circuit, 190 So. 198, 201, that “the language itself of the description is clear, and the map is merely an additional aid to the description.”
 

 Without the attached map to clarify the description, there would be no way of identifying or.locating “ ‘All of my (Pittman’s) property at Port Barrow’ said land consisting principally of lots of ground
 
 as per plan of said Town.”
 
 (Italics ours.) • On the other hand, the worded description may be detailed and accurate but, if there is a direct conflict between the worded description and the map, the map controls the worded description.
 

 With respect to the map which was actually attached to the compromise act, the Court of Appeal, First Circuit, 192 So. 542, stated in its opinion on rehearing:
 

 “Further, the map actually offered in evidence (D — 1),
 
 is not identified
 
 with either act of sale or compromise, and though it apparently was attached to one of these acts, it can not be assumed that it ,is the map referred to by the parties
 
 as the Sulakowski map.
 
 [Italics ours.]
 

 “And, under the circumstances, the map offered in evidence should not have been considered by us as interpretative of the language employed by the parties in describing the property involved in the acts of compromise.”
 

 What more identification with an act does any court want than attaching a map to the act?
 

 
 *16
 
 In Werk v. Leland University, 155 La. 971, at page 975, 99 So. 716, 717, it is said by this court: “The annexing of the map to the deed, and the reference to it in the description given in the deed, made the map as important a part of the description as if it had been actually copied in the deed. Canal Bank v. Copeland, 6 La. [543] 544; Keay v. New Orleans Canal & Banking Co., 7 La.Ann. 259; Lallande v. Wentz & Pochelu, 18 La.Ann. [289] 290; Gray v. Coco, 113 La. 33, 36 So. 878; Nick v. Bautovich, 119 La. 1039, 44 So. 880.”
 

 Mr. Henry A. Dugas, Clerk of the Court for the Parish of Ascension, testified that the map in question was found annexed to the acts, as will appear from the following testimony:
 

 “Q. Mr. Dugas, didn’t you find a map of Port Barrow annexed to the sale from Charles A.- Camp, by his attorney, William A. Dunn, and W. W. McGalliard to Bernard Lemann, the date of the act being February 15, 1890, recorded in Conveyance Book 34, at page 636? A. I looked at the original act.
 

 “Q. There was a map of Port Barrow annexed to the act ? A. Yes.
 

 “Q. But that was not Sulakowski’s map ? A. I don’t • know. It was a map drawn by somebody.. It was not Sulakowski’s map.” Tr., p. 41.
 

 As the Clerk of Court testified that the map was attached to the original recorded act, the only logical conclusion is that the parties intended to be guided by it. ’ There has been no attempt made to show that the map was fraudulently placed there and, in the absence of such a showing, the presumption must be that the public records are correct.
 

 The fact that the map was attached is identification enough.
 

 In Messick et al. v. Mayer et al., 52 La. Ann. 1161, 1167, 27 So. 815, 818, the plaintiffs rested “their claim upon an alleged error of description in a deed bearing date more than 25 years anterior to the institution of this suit, and rely upon
 
 a single sketch of the locus in quo,
 
 purporting to have been made by the parish surveyor,
 
 and which is not authenticated in any way, or dated or approved by any one."
 
 (Italics ours.)
 

 This court, however, considered the sketch or plat
 
 and, on rehearing, said at page 1176 of 52 La.Ann., at page 821 of 27 So., of the opinion: “There appears to have been a variance in one particular between the description in the deed
 
 and in the plat,
 
 — the result, likely, of a clerical error in the former. The district judge properly held that in respect to this variance the plat must control, and that this is confirmed by the fact that, taking the description as furnished by the plats, the aggregate acreage was obtained, whereas, taking the description of the deed, the aggregate acreage was short. See Xiques v. Bujac, 7 La.Ann. 498; Buisson v. McNeil, 9 La.Ann. 445; Wurzburger v. Meric, 20 La.Ann. 415.” (Italics ours.)
 

 Plaintiffs had a perfect right to rely on the map annexed to the compromise acts since the original records of the clerk’s office are considered just as much' notice
 
 *18
 
 to third parties' as the conveyance records. Albert Hanson Lumber Co., Ltd. v. Baldwin Lumber Co., Ltd., 130 La. 849, 58 So. 638.
 

 It is axiomatic that a bona fide purchaser, buying on the face of the public records, is protected to the fullest extent.
 

 .Under the compromise acts or agreements which were entered into on February 15, 1890, the status of the property was in the proportion of an undivided two-thirds to McGalliard and Lemann, and of an undivided one-third to Buford.
 

 An act of partition was entered into by these parties several months later, on May 30, 1890.
 

 The description in the partition reads as follows:
 

 1. All those certain lots and tracts and squares of ground situated in that part of the Parish of Ascension, known as Port Barrow, said lots and squares designated as follows: There follows a list of the lots designated by lot number and square number which Lemann and McGalliard took.
 

 2. There follows a description of lots designated by lot number and square number which Buford took.
 

 “As the whole
 
 will more fully and with greater certainty appear by reference tó a map of said Town of Port Barrow,
 
 made by V. Sulakowski, Deputy United States Surveyor, on the 21st day of August, 1855, and hereto annexed and made a part and portion hereof and paraphed 'Ne Varietur’ for identification with this Act.” (Italics ours.) Tr., p. 17.
 

 It is apparent that the parties are dividing in kind the property which they acquired in the acts entered into on February 15, 1890, a few months previous, being unwilling to remain owners in indivisión, and nowhere in this partition are mentioned
 
 the batture lots.
 
 They were dividing all the lots and squares which they owned in indivisión, a fact which manifests conclusively that the batture lots never entered the minds of the parties in the original compromise acts. The Court of Appeal, First Circuit, has maintained that the map attached was not signed by Sulakowski and, therefore, it could not be assumed that it was the original, nor that it was a tracing. Plaintiffs’ position has been that, probably, it was a tracing of the Sulakowski map and, if it is not, it seems quite a remarkable coincidence that the lot and square numbers mentioned in the partition in kind, which is also made according to the Sulakowski map, should correspond
 
 exactly to the lot and square numbers found on the map attached to the compromise acts or agreements entered into between the parties originally.
 

 Our conclusion is that the judgments rendered by the Court of Appeal, First Circuit, reversing the judgments rendered by the Twenty-third District Court for the Parish of Ascension are erroneous.
 

 It is therefore ordered that the judgments of the Court of Appeal, First Circuit, under review in these cases, be annulled and reversed.
 

 It is now ordered that the judgments in favor of the plaintiffs, Joseph Casso, Jr., and Joseph Schoeny, rendered by the D.is
 
 *20
 
 trict Court for the Parish of Ascension, be and are hereby affirmed, and that the defendant Ascension Realty Company pay the costs of this proceeding, the other defendants having abandoned their claim after the rendition of the judgment of the lower court.