144 So.2d 435 (1962)
Mrs. Mary Magdalen MICHEL, Wife of/and William Edward JAMES
v.
Mrs. Gladys JAMES, Wife of/and Edward J. BUCHERT, Sr.
No. 481.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
*436 Beard, Blue, Schmitt & Treen, A. J. Schmitt, Jr., New Orleans, for plaintiffs-appellees, Mrs. Mary Magdalen Michel, wife of/and William Edward James.
Joseph W. Joachim, Jr., New Orleans, for defendants-appellants, Mrs. Gladys James, wife of/and Edward J. Buchert, Sr.
Robert E. Leake, Jr., New Orleans, for defendants in warranty-appellees, the Hoelzel Heirs.
Before MILLER, VIDRINE and CUTRER, JJ.
CECIL C. CUTRER, Judge pro tem.
This is a proceeding for the enforcement of rights arising out of an alleged servitude in favor of plaintiffs, which servitude affects the adjoining property of their neighbors (defendants). Plaintiffs seek to enjoin the defendants from interfering with their free use of the servitude and to compel the defendants to remove certain improvements which interfere with that use.
Defendants entered a general denial of plaintiffs' allegations and as plaintiffs in reconvention contend that certain gas, water and sewer lines of the plaintiffs pass through defendants' property thus constituted a trespass, entitling plaintiffs in reconvention to a judgment against defendants in reconvention. Defendants also called in warranty, Mrs. Pearl James, widow of Edward J. Hoelzel, ancestor in title of both plaintiffs and defendants. After trial was had on the merits, judgment was rendered in favor of plaintiffs on all counts, with the exception that the trial court refused to order defendants to remove a fence which the plaintiffs alleged interfered with their servitude. The trial court also ruled against the defendants in their call in warranty and their reconventional demand against the plaintiffs, dismissing both actions.
From this judgment, defendants have effectuated this appeal. Plaintiffs answered this appeal and pray that the judgment of the lower court be amended so as to compel defendants to remove the fence partially obstructing their servitude, otherwise the judgment of the lower court to be affirmed in all other respects.
The evidence preponderates that in 1949 the husband of Mrs. Pearl J. Hoelzel purchased a lot fronting on Hullen Street in the Parish of Jefferson. The lot was 50 feet fronting on Hullen Street and 163 feet in depth. Subsequently, plaintiff, William Edward James (brother of Mrs. Hoelzel), *437 agreed to purchase from the Hoelzels, the rear 63 feet of this property for his use as a home. The Hoelzels were to grant him a 12 foot wide servitude, along the 100 feet of the lot which the Hoelzels retained, in order that James would have a means of ingress and egress from Hullen Street to his property. Hullen Street was the only improved street in the neighborhood at the time.
Accordingly, on February 9, 1950, the Hoelzels conveyed to James the rear 63 feet of the property, (Hereinafter referred to as lot "Y"). In the act of sale, a servitude was created on the front 100 feet of the lot retained by the Hoelzels (Hereinafter referred to as lot "X"), the servitude being described and granted in the following specific language:
"The vendor and the Purchaser do hereby reserve and forever dedicate as a common alley way or driveway with a perpetual servitude of access and egress, a certain strip of ground twelve feet (12') in width being the North twelve feet (N 12') of lot `X', owned by the vendor herein, and according to the measurements contained on the hereinabove referred to survey of Mr. Guy J. Seghers, said common driveway begins at a distance of eight hundred thirteen feet (813') from the corner of Cypress and Hullen Streets, insuring twelve feet (12') front on Hullen, by a depth between equal and parallel lines of one hundred feet (100'), running to and adjoining lot `Y', which is being conveyed herein to the Purchaser.
"The consideration herein expressed represents both the sale and conveyance of lot `Y' and the herein referred to dedication of the common driveway."
The same instrument granted plaintiff the additional right to lay sewer, water and gas lines within the servitude.
A survey, prepared by Guy J. Seghers and referred to in the instrument creating the servitude, depicts the driveway or alley way to be 163 feet in length, extending the entire length of the original lot purchased by Hoelzel, rather than only along the 100 feet retained by Hoelzel.
In October of 1951 the Hoelzels sold their 100 feet, or lot "X", to defendant Buchert. The act of sale made no reference to the servitude previously granted, however, it had been recorded in the appropriate conveyance and mortgage records of Jefferson Parish in February of 1950.
There was no obstruction to the plaintiffs' utilization of the entire 12 feet width of the servitude in question until 1956 when the Bucherts constructed a fence across the entire back of their property, including the servitude in question. In the fence, Buchert placed a gate to service a walkway which had been constructed upon the servitude by James. The construction of the fence, with the gate, restricted the use of the servitude to pedestrian use since the gate would not permit vehicular traffic to traverse same. Plaintiff could only get vehicles to his property by using a street which led up to the rear of his property and which street had been improved after the original purchase by plaintiff. Plaintiffs did not complain of this partial interference with their servitude until a few years later when the Bucherts proposed to construct a carport on that portion of their property burdened by the servitude which would render the servitude useless. Shortly thereafter, on April 27, 1960, this suit was filed.
Defendants strongly contend that, if a servitude exists, it extends along the entire length of lots "X" and "Y". This contention is based upon the proposition that the survey is controlling. Defendants' theory appears to be that since the survey depicts the 163 feet servitude as a common driveway, then the servitude created a common driveway for the benefit of both estates, lots "X" and "Y". In support of this theory, the defendants advance the well established principle that where there is a variance between the description in the deed and in the plat, the description in the plat controls. *438 Casso v. Ascension Realty Company et al., 1940, 195 La. 1, 196 So. 1, 130 A.L.R. 636; Lotz v. Hurwitz et al., 1932, 174 La. 638, 141 So. 83; Isacks v. Deutsch, La.App.1959, 114 So.2d 746.
While we do not dispute the defendants' contention that ordinarily the general rule is that where there is a conflict between the deed itself, and the map, survey or plat referred to in the deed, that the latter controls even though the deed itself is unambiguous. However, we do not believe that it applies in a case such as this where it is clear from the evidence adduced below that neither the vendor nor the vendee in the original instrument intended such a result. We believe that this case is controlled by the decision rendered in Burt v. Carrier, La.App., 92 So.2d 86 (1st Cir. 1957). Plaintiff in that case purchased a certain plantation, which surrounded a golf course, from defendants' ancestor in title. As vendor, defendants' ancestor in title, reserved to himself the 55 acres, more or less, upon which the golf course was located. Instead of describing particularly and specifically the metes and bounds of the property reserved, he merely referred to a plat or survey of the golf course attached to and made a part of the deed. Defendants answered the suit admitting their possession of the property in dispute situated along the boundaries of the golf course, but contending inter alia that it was not the intention of either party to the original sale to include the disputed property in the sale. The court stated in its opinion:
"The record shows, without a doubt, that it was not the intention of the original vendor, Harvey C. Blanchard, nor the intention of the vendee, petitioner herein, that the disputed property was to be included in the sale of the plantation. * * * The record further shows that the golf course had been operated as such for several years prior to the sale of the surrounding property, and that the boundaries of said golf course has not changed from said time until present. At the time of the sale, as now, the boundaries of the golf course are made up of fences, headlands, roadways, trees, and fields and were therefore easily distinguishable. The only thing which brings forth the present dispute is the fact that an erroneous map prepared by the vendee in the original sale was attached to said sale and showed false boundaries."
The court then concluded:
"We feel that the act of the vendor in signing the erroneous map, which was not prepared by a civil engineer or a surveyor but which was prepared by the vendee himself, was an act of error on the part of the vendor, and would not change the obvious intention of the parties as expressed in the written act of sale." (Emphasis ours.)
Even if the map in the Burt case had been prepared by a surveyor or civil engineer, such as Mr. Seghers in the instant case, it is apparent from the opinion rendered in the Burt case that the result reached would have been the same since the court cited as a controlling authority the case of Pan American Production Company v. Robichaux, 200 La. 666, 8 So.2d 635. In that case our Supreme Court held that where owners in common of a certain tract agreed to partition it equally, were present when the surveyor established the partition line, and thereafter said owners executed a partition deed to which was attached the plat, which plat was erroneous, there was no valid "consent" to the erroneous location of the line. The Burt opinion quotes the following excerpt from the Robichaux case as the controlling theory to be applied:
"`The cause or purpose of the establishment of the line was to divide the two estates. The parties concurred in that intention. That intention was reciprocally communicated and understood by all. But there was no legal consent to the placing of the line where *439 the surveyor ran it because the consent to place it there was produced by error of fact. The surveyor erroneously represented to the parties that the line was correctly located, and the parties acted upon his representations, thinking they were correct. His representations being erroneous, there was no valid consent.'"
We think, as did the court in the Burt case, that the record amply reflects that it was never the intention of the plaintiffs to burden lot "Y" with a servitude in favor of lot "X" nor was it the intention of their vendor, Hoelzel, to acquire such a servitude. This is shown not only by the facts surrounding and leading up to the sale itself but also by the terms of the sale wherein the servitude was granted. In the description of lot "Y" there is no mention made of any servitude being reserved by the vendor. The description of the servitude negates any idea of the parties intending to have the servitude run through lot "Y". The servitude granted was described as running, not through, but "to and adjoining lot `Y'." For the foregoing reasons, we conclude that the trial judge was correct in his conclusion that the servitude only traversed lot "X" and ended at the property line separating lots "X" and "Y".
The servitude granted plaintiffs herein was designated in the instrument as an "alley way or driveway," "a perpetual servitude of access and egress." Therefore, we interpret the instrument in question as creating a servitude of access and egress 12 feet wide and 100 feet long to be used by either pedestrian or vehicular traffic. The record shows clearly that the servitude was constantly used by pedestrians seeking to come upon plaintiffs' property virtually from the moment of its creation. The municipal number of plaintiffs' house is on Hullen Street, at the beginning of the servitude. Plaintiffs have constantly received their mail, milk, newspapers, guests, etc. from Hullen Street over the servitude along the sidewalk to their property. The record also shows that as late as 1952 the plaintiff James drove his auto over the servitude and parked it at the rear of his house constantly for a period of three or four weeks. This was done while Athania Parkway, the street adjoining the rear of plaintiffs' property, was being paved. There is no doubt that the plaintiffs did not lose their servitude due to the prescription of ten years of nonuse as provided for by LSA-Civil Code, Article 789 and LSA-Civil Code, Article 794. While it has not been shown that vehicular traffic has traveled over the servitude since 1952, and that only pedestrian traffic has utilized it, this does not mean that plaintiffs have lost their servitude for the passage of vehicular traffic also. It is only after the passage of ten years that a less extensive use of the servitude, than the right given by the title creating it, will operate to shrink the servitude granted. LSA-Civil Code, Article 798.
The trial judge below on the basis of Article 784 held that the plaintiffs were not entitled to have the fence removed. Article 784 provides "servitudes are extinguished when the things are in such a situation that they can no longer be used and when they remain perpetually in such a situation." Article 785 provides that where such things are re-established so that they may be used again, the servitude is deemed to be only suspended for the period of nonuse unless the ten years' prescription for nonuse has run. With all deference to our brother below, we must point out that it is only where the erection of works contrary to the servitude has been expressly consented to by the owner of the estate to which the servitude is due, either verbally or in writing, do such works have the effect of extinguishing the servitude. Lavillebeuvre v. Cosgrove, 1858, 13 La.Ann. 323. Mr. James denies ever consenting to the construction of the fence which barred the use of his servitude for vehicular traffic and tacit or implied consent, is not sufficient. Therefore, we hold that such construction would not have the effect of extinguishing *440 his servitude insofar as vehicular traffic over it is concerned.
However, defendants argue that under L.C.P. Article 298(5), now LSA-C.C.P. Article 3663(2), the plaintiffs are not entitled to the injunctive relief sought unless they have been disturbed in the actual and real possession of a real right, which possession they have enjoyed for more than one year prior to the disturbance. Since no vehicular traffic had passed over the servitude strip for more than one year prior to the erection of the fence in 1956 and none has passed since then, defendants contend that the plaintiffs have lost "possession" of the servitude. L.C.P. Article 298(5), now LSA-C.C.P. Article 3663(2), provides: "The injunction must be granted, and directed against the defendant himself, in the following cases: * * * 5. when the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of a real estate or of a real right, of which he claims either the ownership, the possession or the enjoyment." The statute on its face does not require that the action be brought within one year after the disturbance, but only that the person bringing it, whose enjoyment of their real rights has been disturbed, has had no possession of such real rights for a period of more than a year before the disturbance complained of. Thus, since the action brought is neither possessory nor petitory in nature, the fact that no vehicles have traveled over the servitude since 1956 makes no difference. See Churchill Farms, Inc. v. Gaudet et al., 184 La. 984, 168 So. 123. Moreover, assuming arguendo, but not deciding, that defendants' contention that possession relative to real estate is analogous to use of a servitude for the purposes of this statute's application, under our interpretation of the servitude granted, use of it by either vehicular or pedestrian traffic was intended to be granted and hence, was sufficient to preserve it against ten years' prescription. As pointed out previously, the record amply shows that the servitude has been used by pedestrians constantly since its inception and thus by defendants' own interpretation and conception of the requirements of L.C.P. 298(5), relative to the possession of one year prior to a disturbance of the use of a servitude, it is easily shown that the plaintiffs did enjoy the use of "possession" of the servitude in question for more than one year prior to the erection of the fence. If it be defendants' contention that the actual strip of ground burdened by the servitude upon which the fence is erected had to be utilized within one year prior to the disturbance then we need only point out in order to dispose of this contention that servitudes are by nature indivisible and hence use of part is use as to all. LSA-Civil Code, Article 656.
The trial judge also dismissed defendants' reconventional demand for damages due to the alleged misplacement of certain gas, water and sewer lines of the plaintiffs passing through their property which were laid outside the servitude granted for these lines in the sale of lot "Y" by Hoelzel to plaintiffs, such misplacement allegedly constituting a trespass on defendants' property. The trial judge concluded that: "From the evidence presented the plaintiffs in reconvention have not borne the burden of proof as to the location of the pipes and for this reason the court is of the opinion that their demands should be dismissed as of non suit." There appearing no manifest error made by the trial judge, we accordingly concur with and affirm his decision on the reconventional demand. Defendants, plaintiffs in reconvention, state in their brief on appeal that the trial judge erred in holding them to the proof of the trespass since, "It is well settled jurisprudence that it is not encumbent on the owner of the land to prove the nonuse of a servitude but rather `the onus of proving the exercise of the right of servitude within the time of prescription is on the party claiming the right'" citing LeDoux v. Allegre, 10 La.Ann. 706. In that case plaintiff sued the defendants for *441 trespass in that they came upon his land and cut wood therefrom. Defendants plead, in justification, a servitude for the cutting of wood on plaintiff's land, in favor of land owned by them. Plaintiff then argued that the servitude relied on was extinct by nonusage. The court held that quoad the question of servitude the defendants were the real plaintiffs and that the plaintiff in that action might well set up the prescription of nonusage as against the alleged servitude, without even having to especially plead it, and that the onus of proof as to this matter lay with the defendants. The distinction between the instant case and the LeDoux case is that in LeDoux, the plaintiff proved his trespass, whereas the defendants herein, plaintiffs in reconvention, have not, according to the findings of the trial judge below.
Next there is to be considered the trial judge's dismissal of the defendants' call in warranty of the Hoelzel heirs. The copy of the deed by which defendants acquired the property in question conveys same with full warranty, but fails to mention the servitude recognized herein. However, the record also shows that the instrument granting the servitude was recorded prior to the defendants' acquisition of lot "X". Further, the concrete walkway leading from Hullen Street to plaintiffs' property, lot "Y", existed at the time of the sale. In the case of Lallande v. Wentz & Pochelu, 18 La.Ann. 289, it was held that a vendor of property does not warrant the property conveyed as free from encumbering apparent servitudes so that the defendants therein who purchased a block of property, without first inspecting same, were required to pay the full purchase price albeit the usability of the property purchased was reduced substantially by the fact that there was a public levee on it. Since this right of passage is an apparent servitude, it follows that defendants are not entitled to recover in warranty against the Hoelzel heirs. Estopinal v. Storck's Estate et al., La.App., 1950, 44 So.2d 704.
Although plaintiffs prayed for attorney's fees in the lower court and were rejected on this claim by the trial judge, it appears that on appeal plaintiffs have abandoned this demand. The prayer of the answer filed to this appeal by plaintiffs does not request that we amend the lower court's judgment so as to include this claim. Plaintiffs pray for a complete affirmance of that judgment after amending same so as to recognize plaintiffs' right to use the servitude for purposes of vehicular passage. In the light of this, and considering the fact that this claim was not mentioned in their brief on appeal, we deem it to be abandoned.
For the foregoing reasons, the judgment of the lower court is amended so as to recognize plaintiffs-appellees' right to use the full 12 foot width of the servitude for the purposes of vehicular traffic. In all other respects the judgment is affirmed, at appellants' costs.
Judgment amended and affirmed.