351 So.2d 224 (1977)
T. W. GANUS
v.
Russell L. CUOCO and Board of Levee Commissioners of the Orleans Levee District.
No. 8413.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
Rehearing Denied November 10, 1977.
Reuter & Reuter, Arthur C. Reuter, Jr., New Orleans, for plaintiff-appellant.
Richard J. McGinity and D. A. McGovern, III, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON and BEER, JJ.
BEER, Judge.
This is an appeal from a trial court dissolution of a temporary restraining order and refusal to preliminarily enjoin Russell L. Cuoco (plaintiff-appellant's sublessor) and the Board of Levee Commissioners of the Orleans Levee District (hereafter, "Levee Board") from obstructing and preventing boating public access to appellant's leasehold where he operates Plantation Fried Chicken. Appellant, Ganus, contends that *225 the sublease which he holds from appellee, Cuoco, grants the boating public the use of docking facilities and, thus, access to his leased property. Specifically, he claims the right to have his property accessible to the boating public passing alongside the property in the waters of the New Basin Canal.
The lease agreements giving rise to this disputed claim are as follows:
1. By a lease dated March 31, 1964, the Louisiana Department of Public Works leased to Russell L. Cuoco a portion of land on the east side of the New Basin Canal, measuring 387 feet by 77 feet. This lease made no mention of fronting on the New Basin Canal. However, the terms of the lease specifically provide for mooring privileges and set forth conditions governing lessee's construction of boathouses and the installation of pilings and "whaling strips" at dockside.
2. By lease dated October 19, 1964, Cuoco subleased to Ganus Realty Company, Inc., property described as follows:
"A certain portion or strip of land on the east side of the New Basin Canal property between Lake Avenue and U. S. Coast Guard reservation, measuring 218 feet width and front on West End Boulevard by a depth of approximately 77 feet, and fronting in the rear on the New Basin Canal, all as more fully shown on the survey annexed hereto and made part hereof." (Emphasis added.)
A survey of the property showing its western boundary as being on the "New Basin Canal (Side)" was attached to the lease.
The lease provided further:
"It is understood and agreed that the Tenant shall have the right, at its expense, to construct improvements on the premises, and it is contemplated that Tenant will construct a restaurant building. Plans and specifications for the building shall be submitted to Landlord for approval, and such approval shall be granted or refused within ten days from the submission of said plans, it being agreed that the approval and consent will not be unreasonably withheld."
3. By notarial assignment dated August 1, 1967, Ganus Realty Company, Inc. assigned to T. W. Ganus all of its rights, interest and title under its written sublease.
Then, pursuant to the provisions of the sublease, Ganus submitted plans to Cuoco for the construction of a Plantation Fried Chicken restaurant and parking area. These plans included a boat docking area, so designated. The plans were, in turn, submitted by Cuoco to the Orleans Levee Board (which had, by then, acquired the property along the canal from the Department of Public Works and was, by then, the undisputed owner thereof). By letter to Cuoco dated November 14, 1966, the Levee Board, as owner, approved the plans submitted by Cuoco on behalf of his sublessee, Ganus.
The Levee Board letter approving Ganus' plans refers to "the maintenance and operation of two-hundred and eighteen (218) feet Boat Landing along the east side of the New Basin Canal." Furthermore, the approval was subject to the following conditions:
"1. That the improvements shall be installed in strict accordance to the plans, submitted this office, by Mr. T. W. Ganus.
2. That the facilities will be maintained in top condition at all times.
3. That the Parking Area shall be available for the patrons of the restaurant and the boating public.

4. That the facilities for launching boats, now in operation, under your lease, shall be continued in operation by you, or your Sub-lessee, to serve the boat owners of this vicinity.

5. That this approval is granted with the understanding there shall be no claims against the Board by you, or your Sub-lessee, because of the time involved in the approval of these plans." (Emphasis supplied.)
Upon taking possession of the premises, Ganus made improvements to the dock and bulkhead fronting on the New Basin Canal *226 and maintained it continuously since that time until the commencement of those incidents which provoked this litigation. Signs were posted along the dock indicating it was for the use of customers of Plantation Fried Chicken. Appellant estimates that 20-25% of his customers arrive by boat to patronize his establishment during the summer months.
Upon appellant's alleging that the Orleans Levee Board has approved plans by Cuoco to construct 20 boat slips in the canal in back of Ganus' leasehold, and upon further alleging that on August 27, 1976, persons acting on behalf of Cuoco and/or the Levee Board trespassed on the property for the purpose of laying out the configuration of the boat slips in anticipation of immediately starting construction, a temporary restraining order issued on August 31, 1976. However, this order was dissolved and a preliminary injunction denied on September 10, 1976, leading to this appeal.
In its brief written reasons for judgment, the trial court made it quite clear that its decision was based upon the survey attached to and made part of the lease from Cuoco to Ganus. The entire basis for the court's conclusions regarding the configuration and boundaries of the leased premises was, obviously from the written reasons, based upon the testimony of surveyors, called in behalf of Cuoco, who expressed the opinion that the survey designation "New Basin Canal (Side)" was conclusive proof that the west side of the leased property did not abut the New Basin Canal but only that its western side was in the direction of the New Basin Canal. Accordingly, the trial court not only rejected the parol evidence proffered by Ganus but rejected any consideration of it. The parol evidence was proffered for the specific purpose of showing the intention of the parties at the time the lease was confected with regard to access, via the docking facilities, by the boating public. This evidence included the exchanges of correspondence between the leasing parties specifically dealing with the use of the leased premises and the access thereto by the boating public as well as evidence regarding Ganus' actions in maintaining the accessway and the use of same by the boating public for many years preceding the events precipitating this litigation. Appellant contends that the refusal of the trial court to consider the proffered parol evidence was error which was directly causative of the trial court's failure to grant the relief sought.
It is generally correct that where there is a conflict between the description in a deed and that shown by an attached map, the map controls the description. Canal Bank v. Copeland, 6 La. 543; Buras v. United Gas Pipe Line Company, 127 So.2d 271 (La.App. 4th Cir., 1961); Missouri Pacific R. R. Co. v. Littleton, 125 So.2d 37 (La. App. 2nd Cir., 1960); South La. Fair Assn. v. Robert, 3 La.App. 505 (La.App. 1st Cir., 1925). However, this general rule has not been applied to unequivocably preclude a full and fair determination of the true intent of the parties.
This court has previously considered the issue of whether or not parol evidence of the intent of the parties should be admitted to show the extent of property conveyed in spite of the attachment of a survey to the deed. In James v. Buchert, 144 So.2d 435 (La.App. 4th Cir., 1962), the facts were similar to those of the case at bar. Plaintiff and his ancestor in title entered into an agreement purporting to create a servitude of passage 100' in length, running across property to be retained by vendor. A survey attached to the deed showed the servitude as running across both the 100' tract of vendor and the 63' tract purchased by plaintiff. Subsequently, vendor sold the 100' tract to defendant, who claimed that the servitude was in fact 163', as shown by the survey, and not 100' as described in the deed. We disagreed:
"While we do not dispute the defendants' contention that ordinarily the general rule is that where there is a conflict between the deed itself, and the map, survey or plat referred to in the deed, that the latter controls even though the deed itself is unambiguous. However, we do not believe that it applies in a case *227 such as this where it is clear from the evidence adduced below that neither the vendor nor the vendee in the original instrument intended such a result." Id., at 438.
Thus, parol evidence was accepted as proof of the intent of the original vendor and vendee to create only a 100' servitude.
The same result was reached by the First Circuit in Burt v. Carrier, 92 So.2d 86 (La. App. 1st Cir., 1957). There, the act of sale contained language specifically excluding from the sale a tract of land containing vendor's home, golf course, and a roadside club, "all of said reservation being accurately and specifically described and delineated on the plat of survey attached hereto and made a part hereof and paraphed `Ne Varietur' by me, Notary, for identification herewith." However, the survey failed to show the reservation of this tract. After hearing parol evidence of the intent of parties not to convey the tract in question, the court concluded that the signing of the plat by vendor "was an act of error on the part of the vendor, and would not change the obvious intention of the parties as expressed in the written act of sale." Id., at 88.
Here, we are dealing with an instrument that clearly leases property "fronting" on the New Basin Canal. Yet, the trial court has interpreted this instrument by referring to the attached survey which, only by implication and interpretation, can be contended to exclude water frontage or, specifically, docking access by the boating public who may seek to patronize Ganus' fried chicken emporium. The trial court has concluded that the use of "New Basin Canal (Side)" on the survey positively precludes any finding of Ganus' right to have his property accessible to the boating public notwithstanding the parol evidence which is very much indicative of the contrary result.
The lease from Cuoco to Ganus which describes the property as "fronting in the rear on the New Basin Canal" is only rendered ambiguous by reference to the survey which, according to the surveyors called by Cuoco, has the effect of relocating the boundary line of the leasehold from "fronting in the rear on the New Basin Canal" to being only on the "New Basin Canal (Side)."
Cuoco, therefore, is in the position of contending that the lease, which was clear enough standing alone, is now rendered ambiguous by reference to the attached survey. Yet, he further contends that this apparent ambiguity cannot be resolved by parol evidence because the survey is unambiguous.
Even assuming the nonambiguity of the survey as interpreted by Cuoco's witnesses, the fact that a real controversy exists as to the intention of the parties forms a valid basis for the consideration of parol evidence of those intentions. See James v. Buchert, supra, and Burt v. Carrier, supra, as well as Ziegler v. Babin, 242 So.2d 593 (La.App. 1st Cir., 1970), and Blackwell v. Nagy, 122 So.2d 903 (La.App. 1st Cir., 1960), wherein parol evidence was considered to determine the intentions of the parties even though the documents unambiguous.
The Louisiana Civil Code establishes a procedure for the interpretation of ambiguous contracts in the following pertinent articles:
Art. 1945.
"* * *
Second That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
Third That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
Fourth That it is the common intent of the parties that is, the intention of all that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
Art. 1950.
"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
*228 Art. 1956.
"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."
These rules have been applied to lease contracts, as in Hebert v. Valenti, 235 So.2d 193 (La.App. 4th Cir., 1970), wherein we observed:
"It is well settled in our jurisprudence that in interpreting the terms of a contract, the intention of the parties is the law of the case. LSA-C.C. arts. 1945, 1950; Welch-Eckman Const. Co. v. Vancouver Plywood Co., La.App., 213 So.2d 134; Grace v. Morales, La.App., 210 So.2d 60. Furthermore in interpreting a lease contract the court may consider all pertinent facts, including the interpretation given the contract by the parties themselves. Maxwell, Inc. v. Williams-McWilliams Industries, Inc., La.App., 128 So.2d 674." Id., at 197. See also, Marcann Outdoor, Inc. v. Hargrove, 140 So.2d 815 (La.App. 3rd Cir., 1962).
Upon consideration of the parol evidence proffered at trial, we find that it was the intention of all interested parties that sublessee Ganus enjoy such use of the leased property as to be able to serve the boating public. The sublease makes no provision for the use of water bottoms which is not claimed by appellant. However, this does not affect our positive conclusion that ordinary and regular access to Plantation Fried Chicken by the boating public who seek to patronize same from their boats in the New Basin Canal was reserved in the lease but is now impinged upon and, in fact, nullified by the construction of boat slips directly in front of that dockway. Such construction clearly inhibits the intended access by the boating public as contemplated by the parties at the time the lease was confected.
That the intent of the parties was for the customers of the restaurant to have use of the dock, thereby increasing the attractiveness of the property for an enterprise such as sublessee's, is clear from the testimony of Ganus under cross-examination and unchallenged by Cuoco:
"BY MR. McGOVERN:
Q. I submit to you a copy of the sublease and ask you, since you and your attorney both prepared it, where does the language come from `fronting on the rear on the New Basin Canal or as more fully shown on the survey shown and annexed hereto.'
A. The language came to me and my attorney because it was explicit that I wanted the canal if I had the lease. Otherwise I wasn't interested in the lease.
Q. Is the language explicit that you wanted the survey attached to the lease?
A. The survey was handed to us as part or helped to draw the lease.
Q. You still put into the description, `. . . all as more fully shown on the survey as shown and annexed hereto.'
A. My attorney I expressly insisted that We knew there was two, three, four, six, eight feet behind the property. This would eventually prevent us fronting on the canal. Therefore, we must, if we get the lease, we must front on the canal, and therefore, at the suggestion of my attorney we expressed then that the property is more or less fronting on the New Basin Canal. We felt that this was adequate in our discussions with Mr. Cuoco and his attorney. Apparently, this was acceptable to him to clarify the matter.
Q. Was it in addition by you and your attorney `. . . as more fully shown on the survey and annexed hereto?'
A. My attorney does the legal phraseology.

*229 Q. I'm sorry!
A. If I feel this is adequate to convey to the two parties the intent of the lease I agree to it.
Q. Did you inspect the Harris survey of '64 before attaching it to the lease?
A. I looked at it but, Cuoco mentioned there was some additional space behind and we wanted it clearly understood we would front on this canal."
Ganus' plans, which were submitted by Cuoco and approved by the Levee Board, were referred to as plans "for the maintenance and operation of two-hundred and eighteen (218) feet Boat Landing along the east side of the New Basin Canal." Any doubt that the maintenance and operation of such a docking facility was to be the responsibility of Ganus is resolved by examining the manner in which the parties operated pursuant to the agreement. It was Ganus who made improvements to the dock, maintained it continuously since the date of the lease, and posted signs reserving same for the use of his customers among the boating public. All of this was done without objection from Cuoco and/or the Orleans Levee Board. It was only when, years later, the growing demand for boat slips presented an opportunity for enrichment that the intentions of the leasing parties purportedly came into question.
We find that the lease gave Ganus the right to have the boating public pull up to and make use of the dock side for the purpose of patronizing his emporium, and that neither Cuoco nor the Orleans Levee Board may inhibit this use through construction of boat slips or any other facility which blocks the docking ability of the general boating public for the duration of Ganus' lease with Cuoco. Accordingly, we reverse and remand the case to the Civil District Court for the Parish of Orleans for the expeditious formulation and issuance of an appropriate preliminary injunction by the trial court such as will preserve the rights of the appellant, Ganus, consistent with the views expressed in this opinion [1] at appellee Cuoco's costs.
REVERSED AND REMANDED.
NOTES
[1] In this respect, the injunctive order ultimately rendered by the trial court in accordance with this opinion may limit the boating public's access to the Plantation Fried Chicken emporium in terms of the amount (or length) of docking space. The critical point that must be addressed in framing the order granting injunctive relief is that there be reasonable boating public access consistent with the original intention of all parties at interest.