YARRUT, Judge.
This is a suit by a Lessor to recover $7706.01 additional rent due from the Lessee, under an escalator clause in the lease, from September 1, 1952, to August 31, 1958, when Lessee surrendered the premises by mutual consent.
The District Court allowed only $2,054.-40 for the final lease year (September 1, 1957, through August 31, 1958).
Defendant has appealed, praying for a complete reversal, and Plaintiff has answered asking an increase to the full amount of $7706.01.
*675 At the outset, it is appropriate to state that both the original Lessor and Lessee were succeeded by the present Lessor (Plaintiff) and Lessee (Defendant) both bound by the terms of the lease between the original parties.
There is no dispute that the base monthly rental of $1142 was regularly paid as provided in the lease, nor that the additional rent claimed is correct as to amount. The only dispute is whether there is any increase due Lessor and, if so, the period for which due. These are the undisputed facts:
Plaintiff’s predecessor Lessor, as owner, constructed the Humble Building, 900 So. Jefferson Davis Parkway, New Orleans, during the years of 1950 and 1951, and entered into a 15-year lease with Defendant’s predecessor Lessee covering space on the ground floor, commencing September 1, 1951, at a stipulated monthly rental of $1142. Plaintiff and Defendant on August 31, 1957, subsequently amended the lease, under which Defendant agreed to vacate the premises on or before December 31, 1958, but was to continue to pay the base monthly rental of $1142. The base rental was paid through August 31, 1958, when Defendant vacated the premises.
The escalator article of the lease, under which the increased rent is claimed, reads:
“48. It is mutually understood and agreed between Lessor and Lessee that in the event the combined cost for servicing, maintenance, insurance and taxes of the Humble Building should be increased by more than 5% after the first lease year, then the Lessee shall pay to the Lessor at any time during the period of the lease, as additional rent, pro-rata per square foot occupied by the Lessee, the proportionate pro-rata additional cost of such servicing, maintenance and taxes.
“It shall be further provided that should after the first year’s cost of servicing, maintenance, taxes and insurance of the Humble Building be decreased, the Lessee will be given a reduction in rent to be calculated in the same manner as provided above; the Lessor to notify the Lessee in writing at any time there should be a change in the combined cost of servicing, maintenance, taxes and insurance of the Humble Building of 5'%, either by reduction or increase, and to accompany such notice by an affidavit, stating the amount of increase or decrease and the effective date of the commencement in the change of rent caused by either the reduction or the increase.”
The increased rent Defendant would have had to pay under Par. 48, as calculated by professional accountants, was, per annum, as follows:
9/1/52 to 8/31/53 $ 869.98
9/1/53 to 8/31/54 755.37
9/1/54 to 8/31/55 579.64
9/1/55 to 8/31/56 1,594.25
9/1/56 to 8/31/57 1,852.17
9/1/57 to 8/31/58 2,054.60
Total $ 7,706.01
The District Judge rejected Defendant’s argument that Par. 48 was prospective only from actual notice to Defendant, and awarded judgment in favor of Plaintiff for $2054.60, additional rent due for the final lease year, September 1, 1957, through August 31, 1958, notwithstanding notice of the increase was only given Defendant on August 1, 1957.
The pertinent amendment of August 27, 1957, in brief, was that the terminal date of the lease was advanced to March 31, 1958, or such later date as Lessee should have access to substitute premises not later than December 31, 1958; but in event the Lessee should remain in the premises beyond March 31, 1958, it would have to pay the same monthly rental; and all terms of the lease to remain in effect until surrender of the premises by Lessee. As consideration for Lessee agreeing to vacate, Lessor paid Lessee a bonus of $5000.
*676 The first notice of the rent increase under Par. 48 was received by Defendant on August 1, 1958.
Plaintiff contends the increased rent accrued from the time the cost of maintenance increased, regardless of when notice was given Defendant, even if notice were not given until the expiration of the lease. Defendant contends the increase became effective, in futuro, only after notice accompanied by affidavit, given for the first time August 1, 19S8.
If, as contended by plaintiff, the increase became due without notice, there was no logical reason then for the lease to require notice, accompanied by affidavit.
It was as important for Defendant to know promptly the increased rent it had to pay, in order to determine its cost of doing business, income tax, etc., as it was for Plaintiff to collect the increased ad valorem taxes and cost of maintenance services. Accordingly, Plaintiff’s contention is untenable, particularly because the increased costs to it were peculiarly within its own knowledge and ascertainment, and its duty promptly to advise Defendant, not Defendant’s duty to seek and demand an increase in rent from Plaintiff.
On the other hand, Defendant’s contention that the rent increase would be due only from date of actual notice is likewise unreasonable, since Plaintiff must necessarily have had to wait until the end of its fiscal year to determine whether it had an increase in cost of maintenance, etc. In such case, the cost would necessarily relate back at least to the last rental year.
As did the District Judge, we conclude that the language of Par. 48 makes clear that the rent increase was to take effect beginning only with the rental year preceding the year in which the notice was given.
The Presidents of the original Lessor and Lessee testified their understanding of Par. 48 as follows:
Mr. Guibet, President of original Lessee, testified that he would not have permitted his Company to saddle itself with a 15-year lease, under which the Lessor could, at any time during the lease term (presumably even up to the end of the fifteenth year) suddenly present the Company with a bill for additional rent for the entire term.
Mr. Hogan, President of original Lessor, testified clearly to the effect that the escalator provision was to be applied prospectively only, and explained that his attorney prepared the lease; that the purpose of Par. 48 was to protect the Lessor from the effects of increased cost of operation and maintenance over a long-term lease; that the rental payments made by the Lessee were never considered insufficient, and that his Company never had occasion to invoke the escalator clause against Lessee. The original Lessor never sought to apply Par. 48, as contended by Plaintiff, during the three and one-half years it owned the building before its sale to Plaintiff.
Where the words used in an instrument are not clear and explicit, the court may consider all pertinent facts and circumstances, including interpretation given by the parties themselves.
Even if the language of Par. 48 were not clear, any ambiguity must be resolved against Plaintiff and in favor of Defendant. Governor Claiborne Apartments v. Attaldo, 231 La. 85, 90 So.2d 787.
Plaintiff could not seriously have considered it was due any increased rent except for the last year since, as consideration for Defendant’s agreement to cancel the lease, it agreed to pay Defendant a bonus of $5000, instead of offering to remit the controversial past due claimed rent of $7706.01 as consideration therefor.
For the reasons' assigned, the judgment of the District Court is affirmed, Defendant to pay costs in the District Court, and each party to pay its own costs on appeal.
Affirmed.