|, BILLIE COLOMBARO WOODARD, Judge.
We have thoroughly reviewed the record and find no legal or manifest error in the trial court’s decision whatsoever. Judge Brouillette has obviously done a thorough, well researched and carefully thought out, fair and accurate analysis of the facts and law. We adopt his excellent reasons for judgment, below, as the opinion of this court:
This is one of a series of cases involving the ownership of “roadbeds” or alleged “roadbeds” or portions thereof in the “Scott Field” area of Lafayette Parish, Louisiana. Lamson Petroleum Corporation (“Lamson”) seeks judgment against several defendants: (1) recognizing the validity of an oil, gas and mineral lease in which it is lessee, covering three roadbed tracts totaling 1.25 acres; (2) ordering the payment of 100% of the oil, gas and mineral production attributable to Lamson and its lessors from the property; and (3) ordering a report of all sums alleged to be due Lamson from the sale of production attributable to the property. It is a petito-ry action filed after the rendition of a consent judgment in favor of some of the defendants herein on March 29, 1993, in a possessory action, recognizing their possession of the mineral rights at issue and allowing a period of sixty days for Lamson to file this action.[1]
The defendants are alleged to be claiming ownership of the property and/or underlying minerals either as landowners, mineral lessees, royalty owners, or overriding royalty owners, including Lamson’s lessors who are made defendants by authority of CCP 644. Some defendants have been dismissed following compromise settlements. The remaining defendants actively opposed Lamson’s claims in a trial on the merits which included testimony and the admission into evidence of many documents. The entire transcript of testi *1197 mony from Docket 96-2277, bearing the same heading as above but relating to a different roadbed tract, was offered and admitted into evidence in this case on motion of all parties in order to avoid duplication of evidence. Many of the documents admitted in the earlier case were again admitted in this case. Additionally, the transcript of testimony in this case was provided to the court prior to rendering these reasons for judgment.
Portions of the “Reasons for Judgment” dated March 12, 1998 in the aforesaid Docket 96-2277 will be included herein by reference in border to avoid repetition. Some of the issues in that case are the same or similar to those in the present case.
BACKGROUND
The lessors of both Lamson and the defendants trace their titles to Clara Gir-ard Beraud as “common author” within the provisions of CCP 3643.[2] It is undisputed that prior to November 8, 1943, she owned all of the property which is the subject of this litigation. Although Clara Beraud’s acquisition and the earlier title history of the property may be relevant to surveying issues, it is not necessary to review that history here for reasons which will become obvious.
Clara Beraud’s property was located in Section 32, T 9 S, R 4 E, and the South boundary of the property was the township line separating T 9 S and T 10 S. She owned no land South of the township line.
There are three tracts at issue, and for convenience they will be identified according to the captions in the subject lease and in Paragraph 5 of Lamson’s petition as Tract “A”, Tract “B”, and Tract “C”. Tract “A” is a portion of the roadbed in the present Dulles Road. Tract “B” is a portion of the roadbed in the present West-gate Road. Tract “C” is described as “two road portions” and comprises roadbed portions of both Dulles Road and Westgate Road.
The validity of Lamson’s claim relating to Tracts “A” and “B” requires a determination of (1) whether the description of the land in the sale from Clara Beraud to Ashton Beraud and Paul Beraud, Jr. of 100 acres on February 29, 1944,[3] included portions of the public roads (now Dulles Road and Westgate Road) on the South and West and (2) whether the description of the land in the sale from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack of 50 acres on October 20, 1947,[4] included portions of said roads.
The validity of Lamson’s claim relating to Tract “C” requires a determination whether the description of the land in the sale from Clara Beraud to Lloyd Bou-dreaux of “4 acres, more or less” on November 8, 1943,[5] included portions of said roads.
THE MEANING OF “BOUNDED BY THE ROAD”
In each of the three conveyances noted above, the written property description includes “public road” as one or more of the boundaries. Do those boundary descriptions mean that the described property stops at |Rthe edge of the road right of way, or do they mean that all or a part of the roadbeds was included in the conveyance?
In the companion case noted earlier, Docket 96-2277, the reasons for judgment *1198 discuss the “bounded by the road” issue as it relates to deeds in general and also as it relates to the particular facts of that case. For convenience, the court incorporates into these reasons for judgment the section entitled “The Meaning of ‘Bounded on the North by Public Road’ ” on pages 4-8, recognizing, however, that some of the language (the portion which relates specifically to the facts of that case) may have no application in this case. With that background as a start, the descriptions in the conveyances giving rise to this dispute must be interpreted.
TRACTS “A” AND “B”
In the 1944 sale from Clara Beraud to Ashton Beraud and Paul Beraud, Jr., the description was:
That certain tract of land situated in the Parish of Lafayette, Louisiana in Section 32, Township 9 South, Range 4 East, comprising 100 acres and being bounded on the North by the remaining property of the vendor, on the South by public road in part and in part by the property of Lloyd Boudreaux, West by public gravel road, East by the property of Simon Bergeron, Paul Boudreaux and Treville Broussard or assigns.
In accord with the rules recognized and discussed in State v. Tucker, 247 La. 188, 170 So.2d 371 (1964), and followed in the reasons for judgment in docket no. 96-2277, it is concluded that in the above sale Clara Beraud did not convey any portion of the road recited to be the South boundary (now Dulles Road), and she retained whatever part of the roadbed she owned. The South boundary of the conveyed property was the North right-of-way line of the road. The portion of the roadbed retained by Clara Beraud is Tract “A” of the Lam-son lease.
Likewise, for the same reasons, it is clear that Clara Beraud did not convey any portion of the road recited to be the West boundary (now Westgate Road), and she retained whatever part of that roadbed she owned. The West boundary of the conveyed property was the East right-of-way line of the road. The portion of the roadbed retained by Clara Beraud is Tract “B” of the Lamson lease.
Ownership of the subject roadbed strips was transferred by judgment of possession in the succession of Clara Beraud dated April 10, 1945.[6] That judgment recognizes Paul Beraud, Sr. as her only heir at law and, although the judgment does not specifically describe those Lroadbed tracts, it places the said Paul Beraud, Sr. in possession of “all of the property, real, personal and mixed” belonging to the succession. It is the conclusion of the court that Paul Beraud, Sr. became the owner of those roadbed tracts by inheritance from his mother as evidenced by the judgment of possession.
The next occurrence chronologically was the sale from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack on October 20, 1947. The description of the property in that sale is crucial to the decision in this case. The pertinent parts of the description are as follows:
That certain tract of land with all improvements situated in section 32, T 9-S R 4-E in said parish and containing 50 acres and is bounded North by the land of the said Ashton W. Beraud and Paul D. Beraud, Jr., formerly now John Ira Boudreaux, South by Lloyd Boudreaux, public road, and Treville Broussard or assigns, East by Paul Boudreaux, Tre-ville Broussard and Simon Bergeron or assigns and West by public road and being the South half of a 100 acre tract *1199 of land. The said 50 acre tract is shown by the letter “A” on a plat of survey by A.R. Yandle, C.E., dated April 8, 1947 and September 30, 1947 attached hereto made a part hereof and marked for identification herewith and is part of the same property acquired by Paul Desire Beraud, Jr., and Ashton W. Beraud from Clara A. Girard * * *.
The next occurrence chronologically was the judgment of possession dated June 21, 1956, in the succession of Paul Beraud, Sr. in which Ashton Beraud and Paul Beraud, Jr. were recognized as his sole heirs and were placed in possession of all property belonging to the succession. As in the Clara Beraud succession, the. roadbed tracts were not specifically described.
Lamson contends that at the time of the act of sale from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack, the Berauds were not the owners of the disputed tracts and could not have sold them to DeJack; further, that even if they had been the owners, the description in the sale to DeJack did not include those tracts. Defendants contend that Ashton Beraud and Paul Beraud, Jr. were the owners, having acquired same as part of the purchase of the 100-acre tract, and that the sale to DeJack did include those tracts. Defendants assert in the alternative that if the tracts were not acquired by Ashton Beraud and Paul Beraud, Jr. in the purchase from Clara Beraud, that they became the owners by inheritance from their father, Paul Beraud, Sr. and that DeJack became the owner under the doctrine of after acquired title.[7]
1 sThe court having previously concluded that the sale from Clara Beraud to Ashton Beraud and Paul Beraud, Jr. did not in-elude any portion of the roadbeds, the remaining issue is the alleged acquisition by DeJack under the doctrine of after acquired title. In order to determine whether he acquired title in that manner, it is necessary to determine whether the description in the' sale to him includes those tracts, irrespective of the sellers’ [sic] not being owners at that time.
As noted earlier in the reasons for judgment in Docket 96-2277, State v. Tucker recognizes the basic rule that if the description in a sale is based upon boundaries, it is a sale per aversionem and that “deeply embedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries.” The court said further that such a principle “effectuated the intent of the parties, who had definitely fixed ■ a perimeter of the property by contract.” Those rules are a part of the broader rule that:
“the legal guides for determining a question of boundary, or the location of a land line, in the' order of their importance and value, are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the party or parties.” Meyer v. Comegys, 147 La. 851, 86 So. 307, 309 (1920).
That intention of the parties governs the interpretation of all contracts is a basic premise of contract law. Article 2045 of the Civil Code, captioned Determination of the intent of the parties sets forth the rule by defining interpretation of a contract. That article provides: “Interpretation of a contract is the determina *1200 tion of the common intent of the parties. ” Article 2046 provides that, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.[8] Articles 2045 and 2046 are certainly logical and non-controversial. However, their application can be troublesome as evidenced by the present series of cases.
| Relating those general rules of interpretation to this case, it is clear to the court that there may be factors expressing the intention of the parties which contradict a boundary recitation, even in a sale per aversionem. From Tucker comes recognition of the rule that a description with a road as a boundary indicates an intention of the parties that the described property stop at the road. It follows logically from that, however, that if the deed reciting the road as a boundary contains words evidencing a stronger intention to include all or part of the road in the description, the stronger intention should prevail. The problem arises when there are contradictory indications of intention of the parties. In those cases, the court must determine whether the factors indicating an intent to include all or part of the servitude (in this case a road) are sufficient to overcome the basic “intention of the parties” rule that when property is described by boundaries, the description indicates an intention to include only the property within those boundaries.
A classic example of competing “intention of the parties” arguments occurred in the case of Bouligny v. Delatte, 550 So.2d 929 (La.App. 3rd Cir.1989), which, ironically, involved title of a servitude road in Lafayette Parish. A clear understanding of that case, and particularly its relevancy to the present case, requires consideration of the exact language of the property description. By act of sale dated July 14, 1950, Odel Antoine Comeaux sold land to Claude Judice described in pertinent parts as follows:
That certain tract of land situated in the Parish of Lafayette, Louisiana containing * * * (3.47) arpents, bounded * * * southwesterly by a certain servitude road 20' wide established by Act of Partition recorded under No. 210947 * * *. Being the same tract of land acquired by vendor herein by Act of Partition recorded under No. 210947 * * *. Said land herein sold and servitude road being better described on the plat of survey attached hereto and made a part herewith described on said plat as Lot No. 2. (Emphasis added)
The court defined the issue to be determined:
Determination of the principal issue on appeal hinges upon the proper interpretation to be accorded the description of property contained in the act of sale dated July 14, 1950 from Odel Antoine Comeaux to Claude Judice. Specifically, whether by virtue of that deed Judice acquired legal title to the 20 foot strip or whether title thereto was retained by Comeaux. Bouligny contends that by virtue of that sale Judice acquired legal title to this 20 foot strip and by just title conveyed to him the right of access over this strip by the deeds dated September *1201 15, 1977 and May 1, |71981. On the other hand, Delatte contends that Co-meaux retained title to such strip and conveyed same to him by the quitclaim deed dated October 14,1981.
The Court of Appeal recited the following language from the trial court’s written reasons for judgment:
“The Court has reviewed these documents and finds that the twenty-foot strip was included in the purchase by Claude Judice from Odel Antoine Co-meaux in 1950. The law in Louisiana is clear that a plat of survey which is attached to the deed controls when there is a conflict between the written description and the plat. Although a portion of the property description in the deed from Mr. Comeaux to Mr. Judice recites that the property is bounded ‘... southwesterly by a certain servitude road 20' wide ..the plat which is attached shows that the lot which was being acquired included the twenty-foot piece of land.”
The Court of Appeal opinion, like the trial judge’s reasons for judgment, recognized that the description reciting the road as a boundary did create a question:
It must be conceded that the southwestern boundary call employed in the deed from Comeaux to Judice, i.e., “southwesterly by a certain servitude road 20' wide etc.”, gives rise to some ambiguity concerning the extent of the property intended to be conveyed by Comeaux to Judice.
In upholding the trial court’s finding that the 20 foot servitude road was included in the sale, the Court of Appeal recognized that:
The cardinal rule to be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed.
In determining the intention of the parties from the language of the deed, the court discussed the factors which it considered most important:
It is equally well settled that where property is described in reference to an attached plat, the plat controls in the event of a discrepancy in description between the worded description and the plat. (Citations)
[[Image here]]
The deed description calls for a conveyance of 3.47 arpents. The plat of survey attached to the Comeaux-/Judice8 sale reflects that the 20 foot strip is included as lot 2, the same tract acquired by vendor in the partition.
Bouligny serves as a good example of the courts’ recognition that there are limits to the basic rule described in Tucker that a description with a road as a boundary indicates an intention that the described property is contained within that boundary. Although that rule is a very important part of the law relating to sales per aversionem, the jurisprudence, including Bouligny, illustrates that it is not sacrosanct.[9]
Based upon the above discussion, the general issue may be restated: In a property description in a pre-August 1, 1956, *1202 sale or other conveyance in which a road or other servitude is recited as a boundary, what factors indicate an intention to include all or a portion of the road or other servitude in the conveyance? And the ultimate issue is whether the evidence is sufficient to overcome the general rule that when a road or other servitude is named as a boundary, that the described property stops at that boundary.
The above is stated as the general issue in cases of this kind. The specific issue in this case is whether the description in the 1947 sale of the 50-acre tract from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack evidences an intention by the parties to include all or part of the then existing road on the South (now Dulles Road) and the then existing road on the West (now Westgate Road).
Although the court in Bouligny based its decision upon specific factors which it considered as indicating an intention to convey the 20-foot servitude road, this court considers those factors as illustrative only. Certainly other factors may be considered, and it is the duty of the court “to ascertain the intention of the parties from the entire language of the deed.” 550 So.2d 929 at 932.
In order to determine whether the doctrine of after acquired title is applicable, it is necessary to determine whether the roadbed strips at issue were included in the description in the sale from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack. The South and West boundaries are recited as “public road.” However, the tract is described “as shown by the letter ‘A’ on a plat of survey by A.R. Yandle” which is attached. Does tract “A” of the Yandle survey include the portions of the public |9roads (now Dulles and Westgate) which are included in the Lamson Lease?
Michael Mayeux, the registered survey- or called as a witness on behalf of Lamson, testified at length on that issue. His conclusion that the Yandle survey did not include the roadbed strips was based primarily on his earlier conclusion that in the sale of the 100 acres from Clara Beraud to Ashton Beraud and Paul Beraud, Jr., the roadbed strips were not included. In that sale, there was no survey, and the South and West boundaries were recited to be “public road.” Mayeux’s testimony infers from the fact that Ashton Beraud and Paul Beraud, Jr. did not own the roadbed strips, that the Yandle survey could not or perhaps should not have included them.[10] He testified that there could be 50 acres in the tract without including the roadbed strips:
Q. * * * Does it indicate to you, just looking at the plat, looking at the lines on the plat, looking at the other information on the plat, that it is including any of the road to the south, or the road to the west of the 50 acre tract?
A. From my analysis of the plat, I can get the 50 acres based on the numbers this man has on his plat, without including any area within the road. 1 Tr. 198.
That testimony suggests an effort to exclude the roadbed acreage from the 50-acre tract in order to reconcile the survey with Mayeux’s earlier conclusion that the sellers did not own the strips and therefore could not sell them. Although the calculations and measurements which support his conclusion are not unreasonable, they fail to overcome the other evidence indicating that the roadbed acreage was included.
As indicated earlier, based upon Louisiana law as recognized in Tucker, the court agrees with Mayeux’s conclusion that Ash- *1203 ton Beraud and Paul Beraud, Jr. did not acquire any part of either roadbed in the purchase from Clara Beraud. It follows that they could not sell what they did not own. That conclusion is certainly a factor to consider in analyzing the Yandle survey, but is not a valid basis for concluding that Yandle did not include the strips in the 50-acre tract. If a sale of property not owned by the seller could be disregarded, there would be no basis for the doctrine of after acquired title.
It is obvious that Yandle interpreted the 100-acre acquisition by Ashton Beraud and Paul Beraud, Jr. as being the Southernmost 100 acres of Clara Beraud’s property. There is no reason to believe that Yandle intentionally included property which the sellers did not own. Although this court disagrees with Yandle’s apparent interpretation of the 100-acre sale, it was not an unreasonable interpretation. Indeed, astute counsel in the present litigation argue quite forcefully that it is 1 ^unreasonable to conclude that Clara Ber-aud intended to retain the roadbed strips.
Charles Camp, the defendants’ surveyor, concluded that the roadbed property was included in the sales of both the 100 acres and the 50 acres. His testimony relating to the South and West boundaries in the sale of the 100 acres is not convincing and simply indicates a refusal to accept Louisiana courts’ interpretation of sales per av-ersionem. His testimony is essentially a disagreement with the law — at least the law as understood by this court. Apparently Yandle interpreted the description in the sale of the 100 acres as Camp does.
As it relates to the roadbeds, Camp’s interpretation of the Yandle survey is supported by valid reasons. His testimony, although inconsistent in some respects, is convincing that tract “A” includes the entire roadbed on the South and the East half of the roadbed on the West, as the roadbeds existed in 1947. The court agrees with that interpretation. This agreement is based to some extent upon Camp’s calculations but it is based primarily upon a simple examination of the plat of survey. Surveying skills are not required to see that Yandle used heavy lines to show boundaries, and the heavy lines are South of the roadway on the South and in the center of the roadway on the West. Careful examination shows that the heavy line South of the road is over a fence line designation. Perhaps the most convincing evidence is that the heavy line extends from the Southwest corner of the tract to the Southeast corner, where it stops; yet the fence-line designation continues East along a line South of the Treville Brous-sard property which was not being surveyed. It is also significant that if the heavy lines on the South and West are not accepted as Yandle’s designation of the boundaries, there would be no heavy lines to show boundaries on the South and West as there are on the North and East. Additionally, there is no satisfactory explanation for the heavy lines other than serving as boundary lines.[11]
Lamson points out errors in the Yandle survey and inconsistencies in Camp’s testimony relating to the survey, asserting that the survey does not conflict with the written property description. It is clear from the testimony of both surveyors that the survey is not error free. Despite the errors or alleged errors, the survey should not be disregarded. The vital question in this litigation is the intention of the parties as to the South and West boundaries, and in that regard, as discussed earlier, the survey is clear.
*1204 Having concluded from the evidence that (a) the sale to DeJack recited public roads as boundaries on the South and West, and (b) the |nYandle survey which was attached to and made a part of the instrument of sale showed the entire roadbed on the South and half of the roadbed on the West as contained within the tract being sold, the court finds an obvious discrepancy between the description and the survey. Accordingly, it is necessary to determine whether the parties intended to include the roadbeds in the sale.
Bouligny, supra, should be compared to the present case. The Bouligny decision was based primarily on the plat of survey which was attached to the sale. The opinion states that “the plat,” controls in the event of a discrepancy in descnption between the worded description and the plat, ” citing Casso v. Ascension Realty Co., 195 La. 1, 196 So. 1(1940); Ganus v. Cuoco, 351 So.2d 224 (La.App. 4th Cir.1977); Prather v. Valien, 327 So.2d 130 (La.App. 3rd Cir.1976).
The Louisiana Supreme Court in Casso, supra, held:
That the diagram or map attached to a deed controls the description has been so repeatedly held by this court that this rule has become a law of property in this state, and cannot be lightly disregarded in this case or any other case. The map controls the worded description. * * * [T]he worded description may be detailed and accurate but, if there is a direct conflict between the worded description and the map, the map controls the worded description. 196 So.2d 1, 5.
The court in Casso cited cases dating back to 1834 relating to the priority of surveys in property descriptions.
A review of the jurisprudence indicates that there are two rules relating to surveys attached to deeds, and they are sometimes confused. The first rule is that an attached plat becomes a part of the deed; the second rule is that in the event of a conflict, the survey prevails over the wording in a description. Eves v. Morgan City Fund, 252 So.2d 770 (La.App. 1st Cir. 1971), recognized the separate rules:
Where an ambiguity or error exists with regard to the description in a deed, an attached map or survey relating to the ambiguity or error will control. Casso v. Ascension Realty Co., 195 La. 1,196 So. 1[ (1940) ].
Where a map is annexed to a deed and reference made thereto in the description contained in the deed, the map is part of the deed the same as if copied therein. Werk v. Leland University, 155 La. 971, 99 So. 716 [ (1924) ].
If an inconsistency exists between the description in a deed and an attached map or plat, the description in the map or Lp.plat prevails. Missouri Pacific Railroad Co. v. Littleton, La.App. [2nd Cir.1960], 125 So.2d 37.
A comprehensive discussion of the jurisprudence relating to those issues would serve no purpose. Suffice it to say that unless it is very obvious that a survey is wrong,[12] the survey prevails over the wording of the description if there is a conflict or discrepancy.
For the purpose of relating the jurisprudence involving surveys to the present case, it is appropriate to revisit the “legal guides for determining a question of boundary or the location of a land line” discussed in the reasons for judgment in *1205 Docket no. 96-2277. In their order of importance they are natural monuments, artificial monuments, distances, courses, and quantity, but the controlling consideration is the intention of the parties. How does that rule fit with the rules relating to surveys attached to deeds? Surveys are not specifically listed or ranked by importance in the “legal guides.” Apparently they are a part of the catchall “controlling consideration is the intention of the party or parties.”
In the present case, based upon the court’s conclusion that the Yandle survey includes the disputed roadbed acreage in the 50-acre tract, the discrepancy or conflict is therefore between (a) artificial monuments (public roads) recited as the South and West boundaries and (b) the Yandle survey which was attached to the deed.
In Maginnis v. Marcello, 168 La. 997, 128 So. 653 (1929), the disputed tract was described as fronting on Bayou Lafourche but the description referred to a plat of survey which showed the property as bounded by a public road and not reaching the bayou. The Supreme Court held that the survey prevailed. The same decision was reached and for the same reason in Courvelle v. Eckart, 49 So.2d 658 (La.App. 1st Cir.1950), in which Bayou Boeuf was recited as a boundary; and also in Isacks v. Deutsch, 114 So.2d 746 (La.App. 1st Cir.1959), in which Bayou Rouville was recited as a boundary. In Hayward v. Noel, 225 So.2d 638 (La.App. 1st Cir.1969), the court held:
Isacks v. Deutsch, supra, holds that if there is a conflict between the written description in a deed and the map or plat attached thereto, the map -will prevail over the written description. In this case, the written description calls for the property to front on the river, while the plat shows it to front on the public road. Under the above rule, which is well settled, the deed to John R. Hayward transferred only the property delineated on the plat, which is bounded by the public road.
|1sThere are many cases holding that a survey prevails in the event of a discrepancy. The above cases are noted because in each, the recited boundary which conflicted with the survey was a natural monument — the very highest ranking of the legal guides other than intention of the parties. Yet in each case, the survey prevailed. In the present case, the conflict is between the survey and artificial monuments, the public roads — the second ranked legal guide. That was also the conflict in the Bouligny case, discussed earlier.
Based upon the Yandle survey, the court concludes that the description in the sale from Ashton Beraud and Paul Beraud, Jr. to Joseph DeJack included the subject roadbed tracts in spite of the sellers ‘not being the owners at that time. Further, they became owners through the succession of their father, Paul Beraud, Sr. and that he had previously acquired title through the succession of his mother, Clara Beraud. Finally, when Ashton Ber-aud and Paul Beraud, Jr. acquired title through their father’s succession, it vested in DeJack under the doctrine of after acquired title. Accordingly, Lamson has failed to establish title in its lessors of any portion of the property described as Tract “A” and Tract “B” in Paragraph 5 of the petition herein.
TRACT “C”
Lamson’s claim as a lessee of Tract C requires a determination whether Clara Beraud conveyed her interest in the roadbeds on the South and West in the sale of “4 acres, more or less” to Lloyd Boudreaux dated November 8, 1943. The *1206 relevant parts of the description in that sale are recited verbatim:
A certain tract of land situated in the Parish of Lafayette, Louisiana, containing 4 acres, more or less, bounded on the north and east by land of Clara G. Beraud, on the south and west by Public Road and being more particularly described as beginning at the southeast corner of the west half of the west half of Section 32, Township 9 South, Range 4 East, thence running north a distance of 396 feet; thence east a distance of 444 feet; thence south a distance of 396 feet; thence west a distance of 444 feet to the point of beginning, and being a part
It is undisputed that at the time of the sale, Clara Beraud owned the East half of the Southwest quarter of Section 32 and she owned no property in the West half of the Southwest quarter. The starting point in the above description, i.e., the Southeast corner of the West half of the West half of Section 32 was therefore, according to record ownership, the Southwest corner of her property.
The parties disagree as to the location of the Southeast corner of the West half of the West half of Section 32. According to the report and testimony of Michael May-eux, that point is 318 feet West of the | ucenterline of Westgate Road. The defendants contend that it is on the centerline of the road, and that the road was the West boundary of the Clara Beraud property. Regardless of the location of that point, it is clear to the court from the wording of the description that, even if she was incorrect, Clara Beraud thought the public road was her West boundary and she wished to describe a 4-acre tract in the Southwest corner of her property.
Mayeux’s report states: It is our opinion that the intent of the parties in this sale was to locate a tract of land in the comer of the road intersection on the properly of Clara A. Girard as described in the caption of the instrument.[13] There is no dispute as to that statement. The dispute arises from his further conclusion that the South and West boundaries are the “right-of-way limits of the two public roads. ”
If Mayeux is correct that the starting point in the description of the 4-acre tract is 318 feet West of the centerline of West-gate Road, such an error is not important to a determination of the intention of the parties, because the contentions of all parties are based upon an assumption that the starting point was at the intersection of the two roads.
There is no survey to assist the court in determining intention of the parties as there was with Tracts “A” and “B”. Apparently no survey was prepared at the time of the sale to Lloyd Boudreaux, because none was mentioned in the deed. The court is therefore limited to a consideration of the wording of the description. Without clear case law to govern, the intention of the parties is essentially a subjective determination and certainly could vary among reasonable persons.
The defendants argue that a seller would not logically wish to retain a small strip of roadbed without a positive indication of such a wish. The logic of such an argument is acknowledged. However, as pointed out in the reasons for judgment in Docket 96-2277, such an argument cannot be accepted in view of the jurisprudence holding that in a sale per aversionem prior to August 1, 1956, the seller conveys only *1207 what is within the recited boundaries. Had defendants’ present argument been followed in the early case law, there would have been no need for R.S. 9:2971.
The most convincing response to the defendants’ argument is that it fails to recognize that the seller may simply not know that he owns land in the roadbed, and it may be harsh to include land which is not hi^described in the deed simply because the seller did not know he owned it.[14]
In pre-1956 sales, how much evidence is required to overcome the basic per aver-sionem rule recognized in Tucker? While admitting that the decision is at least partially subjective, this court is of the opinion that, based upon the wording of the description in the deed, the parties to the sale expressed a clear and precise intention to convey to the limits of Clara Ber-aud’s ownership on the South and West of the 4 acre tract. Unquestionably, she owned as far South as the township line and unquestionably the Southeast corner of the West half of the West half of Section 32 — the starting point — is on the township line, regardless of the location of that point on an East West line. It is obvious that the parties to the sale thought the road on the West was on the West boundary of her property. Even if Mayeux is correct that her point of beginning was 300 plus feet East of her true West boundary, that in no way detracts from her obvious intention to sell as far South and West as she owned. Perhaps she did not know she was selling part of the roadbeds and perhaps she did. What she did know was the limits of her ownership according to her record title and she demonstrated her clear intention to sell to those limits irrespective of the location of either of the roads.
The jurisprudence requires the court to consider and attempt to give meaning to all the words of an instrument.[15] In evaluating the competing factors in the description, i.e., boundaries against starting point, it is noteworthy that after the reference to the tract being bounded “on the south and west by Public Road,” the very next words are”being more particularly described as beginning at the southeast comer of the west half of the west half of Section 32.” A logical question in interpretation is: “more particularly described” than what? The only possible answer is: more particularly described than what has already been recited. That includes the recitation of public roads as the |1fiSouth and West boundaries. The words “more particularly described as” imply that the preceding words are not particular enough. It is logical to conclude that because there was no survey, Clara Beraud or the Notary drafting the description felt the need to be very specific in order for her to sell to the Southern and Western limits of her ownership. Although the words “and more particularly described as” are not critical to this court’s determination of the inten *1208 tion of the parties, they support the decision that the starting point, even though perhaps erroneous as to its East-West location, should prevail over the boundary recitation in determining the intention of the parties.
Lamson compares this case to Levraea v. Boudreaux, 259 So.2d 642 (La.App. 1st Cir.1972), asserting that the language in the descriptions is similar, and that in each case there is an issue of per aversionem versus metes and bounds. On the contrary, there is a very critical difference in the descriptions in those cases. In Lev-raea, the description begins by stating that the tract being sold is “in the West one-half of the West one-half of the Southwest Quarter * * * and being the North four (4) acres of the tract, ” and then concludes by reciting road boundaries on the North and West. The description in the present case begins by reciting public roads as the South and West boundaries and then states: “and being more particularly described as beginning at the southeast comer of the west half of the west half of Section 82.” After deciding the principal issue, i.e., that R.S. 9:2971 was not applicable because the sale was before August 1, 1956, the court’s ruling in Levraea was a simple one based upon the rules discussed in Tucker, supra. If the description in the present case provided simply that the tract was “in the west half of the west half’ of Section 32 (as distinguished from “beginning at the southeast corner of the west half of the west half of Section 32”), then the cases would truly be comparable and this court’s decision would be as simple as was the decision in Levraea.
The court has reviewed the many other cases cited by Lamson and finds none that contradict this court’s finding of the intention of the parties.
It is the decision of this court that Lam-son has failed to establish title in its lessors of any portion of the property described as Tract “C” in Paragraph 5 of the petition.
CONCLUSION
For the reasons set forth above, the demands of Lamson Petroleum Corporation are rejected and the case is dismissed as to all defendants. Lamson Petroleum Corporation is cast with all costs of this proceeding, subject, however, to any pretrial agreements as to costs which may have been entered into.
117Formal judgment will be signed accordingly.
(Emphasis supplied.) (Footnotes in original.)
CONCLUSION
We affirm the trial court’s decision in its entirety and cast Lamson with all costs.
AFFIRMED.

. Hallwood Petroleum, Inc. et al v. Lamson Petroleum Corporation, docket no. 92-4340, 15th Judicial District Court.

. Joint Stipulation No. 1.

. Lamson Ex. 430.

. Lanison Ex. 433.

. Lamson Ex. 428.

. Lamson Ex. 432.

. "The doctrine [after acquired title] is well established in Louisiana and stands for the proposition that if a vendor sells property he does not own, and subsequently acquires title, the title will automatically vest in his vendee.” Sabine Production Co. v. Guaranty Bank & Trust Co., 432 So.2d 1047 (La.App. 1st Cir. 1983), writ denied, 438 So.2d 570.

. Articles 2045 and 2046 are a part of Title IV of the Civil Code captioned "Conventional Obligations or Contracts”. They apply to sales contracts under the terms of Article 2438 which is the first article of Title VII captioned "Sale”. That article provides that “In all matters for which no special provision is made in this title, the contract of sale is governed by the rules of the titles on Obligations in General and Conventional Obligations or Contracts. ”

. None of the rules relating to the resolution of boundary disputes, whether statutory or jurisprudential, are absolutely controlling. The Louisiana Supreme Court in Hurst v. Ricard stated, "In resolving boundary disputes, this court has consistently recognized that the principal judicial duty and objective is to determine and implement the intention of the parties and that the rules of interpretation set forth in statutes and jurisprudence must be considered as auxiliary rather than as absolutely controlling.” 514 So.2d 14 (La. 1987) (citations omitted).

. 1 Tr. 176-177; 2 Tr. 136.

. Mayeux’s testimony attempting to explain the heavy lines on the South and West of the 50-acre tract was speculative and not convincing. 2 Tr. 87-88, 89, 135-136.

. Such as in Burt v. Carrier, 92 So.2d 86 (La.App. 1st Cir.1957); and James v. Buchert, 144 So.2d 435 (La.App. 4th Cir.1962).

. L. Ex. 1. Presumably the phrase "caption of the instrument” refers to the description of the property.

. RS. 9:2971 in effect says that, if a seller sells property described as bounded by a road or other servitude which the seller owns, it is conclusively presumed that he wishes to include it (even if he did not know he owned it), absent a clear indication of intent to retain it. Regardless of one's opinion as to its wisdom, that statute makes the law easier to apply for sales after August 1, 1956.

. "Clauses in a deed should be regarded as having been inserted for a purpose, and wherever possible they should be given a meaning that will aid the description. If two recitals in a description are inconsistent, the first does not necessarily prevail over the latter, but the whole language of the deed is to be construed together in order that the true construction and intent of the parties may be ascertained.” Tidewater Oil Co. v. Bihm, 220 So.2d 507, 511 (La.App. 3rd Cir. 1969) (citations omitted).