NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-392 consolidated with 22-393

KENNETH M. SPEARS

VERSUS

ANDY WELCH

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2021-406 C/W NO. C-2021-412
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

CANDYCE G. PERRET
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

AFFIRMED.

**Meredith Abrusley Guillory**
**Post Office Drawer 1114**
**Oakdale, LA   71463**
**(318) 335-9771**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Kenneth M. Spears**
     **Angela Spears**

**R. O'Neal Chadwick, Jr.**
**Gregory B. Odom, II**
**W. Alex Hooper**
**Chadwick, Odom, & Stokes, LLC**
**Post Office Box 12114**
**Alexandria, LA   71315**
**(318) 445-9899**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Andy Welch**
     **Melissa Welch**
     **Welch's Stop-n-Shop, LLC**

**PERRET, Judge.**

These consolidated cases arise from a dispute regarding an asserted predial servitude in Oakdale, Louisiana. The trial court's April 26, 2022 Judgment declared that a predial servitude was established by a Servitude of Passage, Instrument No. 493550, filed and recorded on September 17, 2017, in the Allen Parish Conveyance Records in favor of a tract of land, specifically described in the Judgment, currently owned by Appellee, Andy Welch. The Judgment further enjoined Appellants, Kenneth and Angela Spears, as well as their agents and/or employees, from blocking or interfering with the servitude. The Judgment specified, however, that the servitude would be "kept open and not overly 'marked[.]'" Each party was assessed their own costs. Appellants, Kenneth and Angela Spears, now appeal.

**FACTS AND PROCEDURAL BACKGROUND:**

The trial court set forth many of the facts in this case in its Opinion and Reasons for Judgment:

> This case involves a contested predial servitude of passage between two adjacent business owners. One argues to recognize its existence, the other argues that no servitude exists. Andy Welch and his wife, Melissa, (hereinafter "The Welches") are the owners of Welch's Stop-N-Shop gas station located along U.S. Highway 165 in Oakdale, Louisiana. The gas station has been owned by the Welch family since 1980. Adjacent to and north of the Stop-N-Shop is Yum-Yum's, a local popular bar owned by Kenneth and Angela Spears (hereinafter "The Spears["]) since December 2010. Located to the north of both properties is a large somewhat open commercial parking lot that has provided parking and vehicle use to surrounding businesses for more than forty years. Both businesses are bounded to the west by Fisher Street and to the east by U.S. Highway 165.
>
> . . . [T]he Welches made a decision to expand their operation to include selling bulk diesel fuel to eighteen-wheeler trucks. Around 2017, the Welch's began to invest nearly half a million dollars to purchase a new lot and install high velocity diesel pumps and a large canopy to accommodate and refuel eighteen-wheeler trucks. In 2017, Skyline Properties, LLC, owned by Michael W. Willis, sold this lot to

the Welches. Skyline also owned the large open parking lot to the north of Yum-Yum's property. . . .

The new bulk diesel fuel station was to be located just west of the existing Stop-N-Shop lot across the street from Fisher Street. Multiple maps introduced at trial were identified to provide the layout of the land in question. The proposed location of the bulk fuel station was problematic because large eighteen-wheelers would have trouble gaining ingress and egress to and from Highway 165. The existing municipal streets of Fisher Street and Beck Avenue to the north would accommodate smaller vehicles for this purpose but not large eighteen-wheelers.[1] To solve this logistical problem, on September 27, 2017, in addition to buying the lot upon which the bulk fuel pumps and tanks were to be located, Andy Welch also secured from Michael W. Willis with Skyline Properties, LLC, a Servitude of Passage which used a "yellow highlight along the southern boundary of the Skyline Tract on the Plat" to help describe the location of the passage [hereinafter referred to as "the ROW"]. No widths or dimensions were given.

The trial testimony explained that the location of the ROW had been used for many years by large trucks and buses making deliveries and stops to businesses on Fisher Street. Following the execution of the Servitude of Passage, Mr. Willis and his son physically marked the ROW, located just north of Yum-Yum's, with yellow painted lines. The deed and Servitude of Passage were filed in the conveyance records on September 28, 2017, and the Welches went forward with building the diesel fuel expansion. The ROW was additionally marked with a sign indicating trucking access to the fuel pumps. During this time, Yum-Yum's customers were able to park north of the ROW in the parking lot still owned by Skyline and could cross the ROW to access Yum-Yum's. However, in 2021, Skyline Properties, LLC, sold its property to James and Cheryl Moore, which sale included the parking lot north of Yum-Yum's.

---

[1] Some of the testimony at trial disputed that big trucks had difficulty using these municipal streets.

Looking to secure an area for parking and an expansion of Yum-Yum's, Angela Spears went to the conveyance records and obtained a copy of the 2017 Servitude of Passage. On the attached survey, the highlighted passage was not in the parking lot north of Yum-Yum's, but was marked south of Yum-Yum's, between Yum-Yum's and Welch's Stop-N-Shop. This is not where the ROW was physically marked by Mr. Willis. Furthermore, the highlighted passage on the survey was in a location not owned by Skyline Properties, LLC; instead, it was marked on property belonging to the Spears. Thus, the Spears purchased a portion of the parking lot north and adjacent to Yum-Yum's from the Moores, which included the portion of the lot over which Mr. Willis had physically painted the ROW. The Cash Warranty Deed between the Moores and the Spears also warranted against eviction by the Servitude of Passage held by Mr. Welch and described the document by the Instrument number filed in the conveyance records.

The trial court further summarized:

> Soon after this sale in October 2021, the Spears and the Welches took measures to physically establish their claims and possession against one another. The Welches more visibly marked and painted their claimed passage route and the Spears attempted to block or barricade the route entrance to Highway 165. Within two or three days of each other, both sides rushed to Court to seek relief.

The Spears filed a Petition for Declaratory Judgment, suit number C-2021-406, on October 29, 2021, and sought to be declared the rightful owner of the property, "without an encumbrance in favor of" the Welches and requested that the Servitude of Passage be declared null and void.

Mr. Welch filed a Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory Judgment, and Damages in suit number C-2021-412 on November 2, 2021. In that pleading, Mr. Welch asserted

that he and his wife, Melissa Welch, acquired Welch's Stop-N-Shop from his mother. He further asserted the necessity of using the ROW for large truck drivers to access the diesel fuel tanks at Welch's Stop-N-Shop. In discussing the Servitude of Passage, Mr. Welch asserted that the document correctly described the ROW, but acknowledged that the attached survey incorrectly identified the ROW's location. Mr. Welch sought a declaratory judgment that a predial servitude exists between Yum-Yum's and the parking lot, as physically marked, in favor of Welch's Stop-N-Shop, the dominate estate, either due to his legally enforceable Servitude of Passage or due to acquisitive prescription. Additionally, Mr. Welch sought temporary, preliminary, and permanent restraining orders to restrict the Spears from interfering with the ROW. Mr. Welch made assertions that he would be irreparably harmed—that he lost money due to the Spears blocking of the ROW and that he would lose customers by the continued interference with the ROW. The Servitude of Passage was attached to the petition.

On November 2, 2021, the trial court signed an Order for Issuance of Temporary Restraining Order as requested by Mr. Welch. Thereafter, the Spears filed an answer and reconventional demand. In the reconventional demand, the Spears argued that the temporary restraining order was improper, should be dissolved, and that they are entitled to damages for the wrongful issuance of the order pursuant to La.Code Civ.P. art. 3608. The Spears asserted they suffered damages from Mr. Welch's trespass and are also entitled to attorney fees and costs.

On November 29, 2021, Mr. Welch filed a First Supplemental and Amended Petition ("SA petition"), adding Melissa Welch and Welch's Stop-N-Shop as Plaintiffs in C-2021-412. The SA petition asserted that Andy and Melissa Welch are the sole members of Welch's Stop-N-Shop, while "Melissa owns an undivided

4

interest in the immovable property upon which Welch's Stop-N-Shop operates[.]" Melissa leases the property to the business.

The cases were consolidated and set for trial. The Welches asserted the Servitude of Passage established a valid servitude in the area physically marked on the ground by Mr. Willis, north of Yum-Yum's. The Welches also argued that the servitude was an apparent servitude and established by thirty years' acquisitive prescription. The Spears claimed the wrong physical description in the Servitude of Passage was fatal to the establishment of a predial servitude and that the Welches cannot prove a servitude by acquisitive prescription.

The trial court ruled in favor of the Welches and declared that the Servitude of Passage conveyed a predial servitude, then specifically described the servitude and the tract of land it favored in the judgment, which location "coincides with the actual markings originally painted" and that the width "should be wide enough for an eighteen-wheeler to ingress and egress Highway 165." The Judgment further prohibited the Spears from interfering with the ROW, denied the Spears' request for a declaratory judgment and attorney fees, and required that the servitude "be kept open and not overly 'marked' to permit Yum-Yum's customers and patrons to traverse, drive across, or walk across" the ROW.

On appeal, the Spears assert three assignments of error:

1.    The trial court committed legal error by reforming an insufficient description of a servient estate in a recorded deed to reflect what it presumed to be the intent of the contracting parties to find a predial servitude of passage created by title prejudicing the rights of third parties protected by the public records doctrine.

2.    The trial court failed to address the issue of 30-year acquisitive prescription claimed by Appellees on another alleged dominant estate after finding a servitude of passage created by title in favor of a separate dominant estate even though extensive testimony and evidence was taken on the issue at the hearing.

5

3. The trial court abused its discretion by denying SPEARS' request for attorney fees for the wrongfully issued Temporary Restraining Order, effective for several months, enjoining property that was unreasonably and inconsistently defined in favor of property not owned by the requesting party who testified he did not request such an order.

**DISCUSSION:**

Assignment of Error Number One:

In their first assignment of error, the Spears make three arguments to assert that the trial court erred in declaring that the Servitude of Passage created a predial servitude in favor of the Welches. First, the Spears argue that the Servitude of Passage insufficiently describes the servient estate because it "consistently and accurately describes a completely different tract of land in both the wording of the document and marking on the attached survey." Thus, the trial court "*changed* the record" by altering the description of the servient estate in the Judgment. Second, the Spears assert the trial court improperly reformed the Servitude of Passage to enforce the intent of the contracting parties. Third, the Spears allege that the trial court violated the public records doctrine by reforming and enforcing the servitude according to the parties' intent against the Spears, and in considering the Spears' actual knowledge of the alleged encumbrance.

Appellate courts give "wide discretion in deciding whether to grant or refuse declaratory relief" and consider whether the trial court abused that discretion on appeal. *Miller v. Seven C's Props., LLC*, 01-543, p. 4 (La.App. 3 Cir. 11/21/01), 800 So.2d 406, 409, *writ denied*, 01-3309 (La. 3/8/02), 811 So.2d 878. Furthermore, when reviewing factual findings of the trial court, the manifest error-clearly wrong standard of review is applied on appeal. *Brunson v. Crown Brake, LLC*, 18-994

6

(La.App. 3 Cir. 6/19/19), 275 So.3d 432, *writ denied*, 19-1184 (La. 10/15/19), 280 So.3d 613.

As to predial servitudes, this court has explained in depth:

> Louisiana Civil Code Article 646 defines a predial servitude as "a charge on a servient estate for the benefit of a dominant estate." As real rights burdening immovables, "[p]redial servitudes are established by all acts by which immovables may be transferred." La.Civ.Code art. 722. "The use and extent of such servitudes are regulated by the title by which they are created." La.Civ.Code art. 697.

> > Owners have the right to establish on their estate, or to acquire for the benefit of their estate, such predial servitudes as they deem proper. This freedom, however, is tempered by rules of public policy enacted in the general interest. [La.] C.C. art. 11. Apart from general limitations, the creation of predial servitudes by juridical act is subject to special rules that are largely insusceptible of modification by agreement. These rules, limiting contractual and testamentary freedom, are designed to effect a balance between individual demands for the recognition of modifications of property rights to suit individual needs and social demands for the preservation of a relatively simple system of unencumbered property. See Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 La.L.Rev. 44 (1969).

> La.Civ.Code art. 697, Revision Comments—1977, comment (b) (West 2018).

> "Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.Civ.Code art. 730. Note,

> > [i]t is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved *in favorem libertatis*. See Domat, Les lois civiles dans leur ordre naturel, 1 Oeuvres de Domat 329 (ed. Remy 1828); 2 Toullier, Droit civil français 192 (1833). The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." Parish v. Municipality No. 2, 8 La.Ann. 145,

7

147 (1853), cited with approval in Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74 (1958). See also McGuffy v. Weil, 240 La. 758, 767, 125 So.2d 154, 158 (1960): "any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner". The rule that the proper interpretation of an ambiguous instrument is that which least restricts the ownership of the land has been applied by Louisiana courts in a variety of contexts. See, *e.g.*, Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App.3rd Cir.), writ refused 250 La. 924, 199 So.2d 923 (1967) (determination of the question whether a landowner created a single servitude over contiguous tracts or a series of multiple interests).

La.Civ.Code art. 730, Revision Comments—1977, comment (b) (West 2018). "In consequence of this, servitudes claimed under titles, are never sustained by implication-the title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due." *Parish v. Municipality No. 2*, 8 La.Ann. 145, 147 (1853). Predial servitudes, therefore, "cannot be inferred or implied from vague or ambiguous language." *Mardis v. Brantley*, 30,773, p. 2 (La.App. 2 Cir. 8/25/98), 717 So.2d 702, 704, *writ denied*, 98-2488 (La. 11/20/98), 729 So.2d 563.

To be effective as to third parties, however, the instrument establishing "a real right in or over an immovable[,]" such as a predial servitude, must be "registered by recording it in the appropriate mortgage or conveyance records[.]" La.Civ.Code art. 3338. Significantly, "such an act or instrument is not effective as to a third person until it is recorded." La.Civ.Code art. 3340. Louisiana Civil Code Article 3343 defines a third person as "a person who is not a party to or personally bound by an instrument."

. . . .

. . . Because a predial servitude cannot be inferred or implied from vagueness or ambiguity, the language of its title must, therefore, be express. Moreover, both the dominant and servient estates need to be reasonably identifiable therein, and such a servitude is only binding on third parties once it is properly recorded.

*Brunson*, 275 So.3d at 437-39.

In the current case, the Servitude of Passage was recorded prior to the Spears' purchase of the property in dispute. Thus, the question presented is whether the

Servitude of Passage reasonably identified a servient estate that was encumbered in favor of a reasonably identifiable dominant estate. *See Id.*

The Servitude of Passage identifies the tracts of land involved and agreement as follows:

WHEREAS, SKYLINE is the owner in indivision of that certain tract of land being shown as "Block 1 Pine Ridge Addition" on the Survey by William J. Wood, Jr., dated July 4, 2017 (the "Skyline Tract"), a copy of which is attached hereto as Exhibit A (the "Plat");

WHEREAS, [ANDY] WELCH is the owner of that certain tract of land more fully described as

A CERTAIN PIECE, PARCEL OR TRACT OF LAND, TOGETHER WITH ALL BUILDINGS AND IMPROVEMENTS LOCATED THEREON AND ALL RIGHTS, WAYS AND PRIVELEGES THEREUNTO APPERTAINING, BEING, LYING AND SITUATED PARISH OF ALLEN, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

DESCRIPTION OF A 0.488 +/- ACRE TRACT BEING PART OF BLOCK 2, PINE RIDGE ADDITION, LOCATED IN SECTION 3, TOWNSHIP 3 SOUTH, RANGE 3 WEST, LOUISIANA MERIDIAN, SOUTHWEST LAND DISTRICT, ALLEN PARISH, LOUISIANA, COMMENCING AT A 1/2" IRON ROD MARKING THE NORTHEAST CORNER OF BLOCK 2, PINE RIDGE ADDITION; THENCE PROCEED SUTH 00 DEGREES 45 MINUTES 08 SECONDS WEST, ALONG THE WEST RIGHT OF WAY LINE OF FISHER STREET, A DISTANCE OF 256.09 FEET TO A 1/2" IRON ROD MARKING THE POINT OF BEGINNING OF THE TRACT TO BE DESCRIBED; THENCE CONTINUE SOUTH 00 DEGREES 45 MINUTES 08 SECONDS WEST, ALONG SAID RIGHT OF WAY LINE, A DISTANCE OF 107.44 FEET TO A 1/2" IRON ROD; THENCE TURN RIGHT AND PROCEED SOUTH 89 DEGREES 46 MINUTES 48 SECONDS WEST, ALONG THE APPARENT NORTH RIGHT OF WAY LINE OF CALCASIEU STREET, A DISTANCE OF 198.99 FEET TO A 1/2" IRON ROD; THENCE TURN RIGHT AND PROCEED NORTH 00 DEGREES 13 MINUTES 12 SECONDS WEST, A DISTANCE OF 105.14 FEET TO A 1/2" IRON ROD; THENCE TURN RIGHT AND PROCEED NORTH 89 DEGREES 07 MINUTES 41 SECONDS EAST, A DISTANCE OF 200.82 FEET TO THE POINT OF BEGINNING. THE ABOVE DESCRIBED TRACT CONTAINS 0.488 ACRES AND IS MORE PARTICULARLY INDICATED ON CERTIFICATE OF SURVEY BY WILLIAM J. WOOD, JR. DATED JULY 4, 2017.

(the "Welch Tract"), having purchased said property this day from Skyline.

WHEREAS, a portion of the Skyline Tract has been used as a right of way allowing ingress and egress from the Welch Tract to LA HWY. #165, shown in the YELLOW highlight along the southern boundary of the Skyline Tract on the Plat (the "Right of Way Area");

The Servitude of Passage acknowledges the purpose of the ROW was to provide Welch access to Highway 165 across Skyline property and was granted in favor of Welch, "his heirs, successors and assigns[.]" The ROW was specifically declared a predial servitude.

Attached to the Servitude of Passage was the July 4, 2017 Survey noted therein. The survey contains a hashed area bordered to the south by "Vernon & Elsie Welch" and an empty block to the north. North of the empty block is the text "Block 1 Pine Ridge Addition[,]" which is contained within four lines: Fisher Street to the west, U.S. Hwy. #165 to the east, W.D. McCullen Subdivision to the north, and "N 89° 11′23″E 173.94" to the south.

It appears that, according to the parties, the ROW was intended to be labeled somewhere near the N 89° 11′23″E 173.94 line. According to the parties, the empty block on the survey was not owned by Skyline but was and is currently owned by the Spears. Thus, the location of the ROW marked on the survey places the ROW through the Spears' property. The Spears argue that this error is fatal to the establishment of the ROW which would be effective against third parties. Additionally, the Spears assert that the description in the Servitude of Passage itself is incorrect, arguing that Block 1 Pine Ridge Addition extends down to the boundary line with Vernon & Elsie Welch, and encompasses both the property owned by the Spears and by Skyline.

We are cognizant of the established law in Louisiana that, "unless it is very obvious that a survey is wrong, the survey prevails over the wording of the description if there is a conflict or discrepancy." *Lamson Petrol. Corp. v. Hallwood Petrol. Inc.*, 00-695, p. 12 (La.App. 3 Cir. 1/31/01), 824 So.2d 1194, 1204. In *Bourgeois v. Linden Interest*, 11-1130 (La.App. 3 Cir. 2/1/12), 84 So.3d 715, this court determined that a plat attached to a partition and relied upon by the trial court was erroneous and, thus, did not control over the property description within the partition. The property description described the boundary between two tracts of land as the center of an existing road; however, the attached plat depicted the boundary as a straight line between two points. The landowners testified that the straight line did not accurately depict the road. Additionally, the surveyor testified that the straight line also did not accurately depict the boundary.

While the *Bourgeois* court recited the settled jurisprudence that, normally, a plat prevails over a property description when they conflict, it acknowledged *Lamson*, and stated: "the general rule is not applicable when 'it is very obvious that a [plat or] survey is wrong.'" *Bourgeois*, 84 So.3d at 720 (quoting *Lamson*, 824 So.2d at 1204). Based on the record, the *Bourgeois* court determined "the plat does not provide a reasonable basis for the trial court to disregard the property descriptions[,] nor does it provide a reasonable basis to determine that the boundary in dispute is a straight line between points A2 and Y." *Id*. at 720.

We similarly find that, in this case, the ROW marking on the survey is obviously wrong, as it indicates the ROW crosses property not even owned by Skyline. In this case, we find that the property description in the Servitude of Passage controls. We further find that the Servitude of Passage, by its express language, reasonably describes both the servient and dominant estates as well as the

11

ROW location; thus, we find no error in the trial court's granting of a declaratory judgment in favor of the Welches.

Assignment of Error Number Two:

Considering the above, it was not necessary for the trial court to determine whether a servitude was acquired by acquisitive prescription and we, likewise, find that the issue is moot.

Assignment of Error Number Three:

In their third assignment of error, the Spears argue that they are entitled to damages in the form of attorney fees for defending against a wrongfully issued temporary restraining order. They assert the TRO was wrongfully issued because Mr. Welch requested the TRO but had no ownership interest in the property at 281 Highway 165 and the property to be enjoined was not reasonably described. The Spears assert that the property located at 281 Highway 165 is owned by Melissa Welch and Suzette Lee Benoit Leonards. The Spears additionally argue that, not only did the TRO impermissibly identify and reference an attached survey to describe the ROW, the survey reflects the dominant estate as the empty lot on Fisher Street, not the property at 281 Highway 165. "In sum, the property enjoined in the TRO was paradoxical and not reasonably described and referenced other documents in violation of the law."

In reviewing whether a TRO was wrongfully issued, this court has applied the manifest error or clearly wrong standard of review. *Jennings Guest House v. Gibson*, 07-912 (La.App. 3 Cir. 12/5/07), 971 So.2d 506. "The trial court has great discretion in granting or denying injunctive relief; thus, the appellate court will not disturb its determination without proof that the trial court manifestly abused its discretion." *Id.* at 509.

12

Louisiana Code of Civil Procedure Article 3608 (emphasis added) provides for the possibility of damages when a TRO is wrongfully issued:

> The court **may** allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction **may** be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.

While the Spears moved to dissolve the TRO in their reconventional demand filed on November 5, 2021, they later agreed to its extension on November 12, 2021. Louisiana Code of Civil Procedure Article 3604 states that a TRO may be continued for a longer period of time than that provided for by statute when "[t]he party against whom the order is directed" consents. The parties consented to the hearing on the preliminary injunction being moved and the TRO being maintained until December 9, 2021, the first day of trial. Thereafter, the TRO was extended and maintained until a judgment was rendered.

Following a trial on the merits, the trial court granted a declaratory judgment in the Welches' favor, finding a servitude existed and enjoined the Spears from interfering with that servitude. While the judgment is silent as to any finding that the TRO was wrongfully issued, the judgment specifically denied the Spears any attorney fees. Mr. Welch was also refunded his security relating to the TRO.

Despite a party's ultimate success on the merits of a case, a TRO may still be found to have been wrongfully issued entitling the enjoined party to damages. *See United Gas Pipe Line Co. v. Caldwell*, 590 So.2d 724 (La.App. 3 Cir. 1991). In *United Gas Pipe Line*, United Gas Pipe Line Co. ("United") obtained a TRO to enable it to replace a pipeline on the Caldwells' property. In obtaining the TRO, United asserted their right based on the William Stutes servitude it possessed.

However, United's servitude on the Caldwells' property was established in the Euphemond Broussard servitude agreement, not the William Stutes agreement that was used to obtain the TRO. The William Stutes agreement "did not describe the Caldwell property and therefore afforded no rights to United to enter that particular tract of land." *Id.* at 726. Thus, the Caldwells sought damages and attorney fees alleging a wrongfully issued TRO. Ultimately, the trial court determined United had the right to replace the pipeline due to its servitude set forth in the Euphemond Broussard agreement and was not guilty of trespass. But, because United relied on the wrong servitude in obtaining the TRO, the TRO was wrongfully issued. Thus, this court affirmed the trial court's finding that the TRO was wrongfully issued and its award of damages. However, this court reversed the award of attorney fees because the TRO expired before the hearing on the Caldwells' reconventional demand.

In this case, the Spears assert Mr. Welch was not the owner of the property at the address provided for in the TRO and argue that the survey attached identifies a dominant estate that is not at the address provided. Although Mr. Welch was not the owner of the property at 281 Hwy 165, the owner, Melissa Welch, was later added through the SA petition after the preliminary injunction hearing was continued. Furthermore, Mr. Welch was the owner of the dominant estate identified in the attached survey. Additionally, despite the survey being attached, it was unnecessary to the identification of the ROW as the TRO states, "[t]he servitude of passage is physically marked on the pavement of the aforementioned tract of land identified as 'Block 1 Pine Ridge Addition.'"

While we find it was problematic that the initial TRO named Mr. Welch as the owner of property he did not own and identified that address as the dominant

14

estate, Mr. Welch was the owner of the actual dominant estate with regards to the ROW, the amending petition added Melissa Welch, the partial owner of the property at 281 Hwy 165, and the ROW was physically marked. Additionally, it appears from the record that the property owned by Mr. Welch, the dominant estate, was used for parking trucks and diesel fuel as part of Welch's Stop-N-Shop, located at the address provided in the TRO.

More importantly, we find no error in the trial court's denial of attorney fees to the Spears for wrongful issuance of the TRO. Louisiana Code of Civil Procedure Article 3608 provides only that a court *may* award damages and attorney fees for the wrongful issuance of a TRO. *See J. Caldarera & Co., Inc. v. City of Baton Rouge*, 03-759 (La.App. 1 Cir. 2/23/04), 873 So.2d 728. While the Spears moved to dissolve the TRO in their reconventional demand filed on November 5, 2021, (the TRO was signed on November 2, 2021), on November 12, 2021, the parties consented to the hearing on the preliminary injunction being moved and the TRO being maintained until December 9, 2021. During this time, Melissa Welch and Welch's Stop-N-Shop were added as plaintiffs and the case was consolidated with the petition for declaratory judgment filed by the Spears. Furthermore, the TRO only prevented the Spears "along with their agents, employees, and counsel, and all persons acting in concert or participation with them, from *interfering with* the servitude of passage[.]" (Emphasis added). The Spears' patrons were not prevented from crossing the ROW in order to enter their business.

The Spears submitted their contract for fees with their counsel as evidence and testified that they had two contracts—one for the filing of their suit and one for defending against the suit filed by the Welches. As to the Welches' suit, the Spears argue that they were "required to defend against a temporary restraining order,

preliminary injunction, and permanent injunction for a predial servitude established by title and 30-year acquisitive prescription against three different plaintiffs involving two separate purported dominant estates." However, the Welches also petitioned for a declaratory judgment in their original pleading based on either title or acquisitive prescription. Thus, the Spears were required to answer the Welches' petition and to defend against the servitude established by title and acquisitive prescription as well as the other forms of requested injunctions regardless of the issuance of the TRO. After a review of the record, we find that only minimal in-brief argument (such as that found in the Spears' pre-trial memoranda) as well as trial was spent on the TRO issue. While the Spears are correct that most of the trial centered on the Welches' case-in-chief, only a small portion involved questions and evidence regarding the TRO. Specifically, that line of questioning involved brief questioning of the Welches regarding whether a restraining order was sought and the ownership of the 281 Highway 165 address.

Thus, after a review of the records, we find no abuse of discretion in the trial court's decision not to award attorney fees to the Spears.

**DECREE:**

For the foregoing reasons the April 26, 2022 Judgment of the trial court in favor of Appellees, Andy Welch, Melissa Welch, and Welch's Stop-N-Shop, is affirmed in all respects. Each party is to bear their own costs on appeal.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.